CLARK E. FREED v. AMERICAN FIRE INSURANCE COMPANY.

[43 South., 947.]

TRUSTS AND COMBINES. *Insurance. Subrogation. Laws* 1900, *p.* 125.

The subrogation of an insurance company to the right of action of the insured against a wrongdoer through whose tort the property was destroyed by fire has no relation to the business of an unlawful combination of which the company is a member, and is unaffected by Laws 1900, p. 125, avoiding all contracts made by members of such a combination for any purpose relative to the business thereof.

FROM the circuit court of, second district, Coahoma county. HON. SAMUEL C. COOK, Judge.

The American Fire Insurance Company, the apuellee, was plaintiff in the court below, and Freed, the appellant, was defendant there. From a judgment in favor of the plaintiff the defendant appealed to the supreme court.

The plaintiff, the American Fire Insurance Company, had insured the property of one Darden, which was destroyed by fire caused by the wrongful act of defendant. The insurance contract contained a provision subrogating the insurer to the rights of the insured against persons responsible for the destruction of the property. After the insurance company had paid the claim of the assured for the loss under the policy, Darden assigned all right of action which he had against Freed for the wrongful destruction of his property. This suit was then filed by the fire insurance company against the defendant to enforce its rights under the subrogation agreement and assignment. Defendant resisted the recovery, pleading that at the time of the issuance of the policy, and execution of the assignment of the claim to plaintiff, the insurance company was a member of an illegal trust and combine. To this plea the plaintiff replied that the only business of the combine was

to fix rates, and that the subrogation agreement was entirely independent of it. The defendant demurred to the replication, and on the court's overruling the demurrer, declined to plead further, and judgment final was rendered against him.

*L. M. Gaddis,* for appellant.

It is conceded by appellee's pleadings that it is a member of a combine and trust, and the solution of the issues raised by the pleadings depends, therefore, upon two questions: First, the construction by this court of the phrase, "any purpose relative to," which occurs in acts of 1900, ch. 88, sec. 3, as applied to the contract of insurance; and, as a corollary thereto, whether the subrogation condition, provided for in the standard form of policy in issue, is a part of the consideration for which the policy was issued; second, whether the matter set up as a defense by the appellee raises such a collateral issue as is not permissible in a strictly legal proceeding. Appellant contends that since the act of 1900 (Laws, p. 125), commonly known as the "Anti-trust Statute," declares that all contracts of a trust and combine, or of its members, relating to its business are void and unenforceable, it follows that the contract of insurance between appellee and Darden was illegal. The original contract of insurance being illegal, the contract of subrogation growing out of it is void and unenforceable. This court held, in *Adler* v. *Searles,* 86 Miss., 406, s.c., 38 South., 209, and in *Woodson* v. *Hopkins,* 85 Miss., 171, s.c., 37 South., 1000, that wherever, in any attempt to maintain a right of action, it is necessary to refer to an illegal transaction either executed or executory to establish that right, the recovery must fail. Now, but for this agreement for subrogation, the insurer would have been a complete stranger as to Freed, and without any action whatever against him. Consequently, in order to maintain a right of action against Freed, the appellee must resort to its illegal contract to establish its claim, and in fact does so, for in its declaration it sets out distinctly and fully

the original contract of insurance and its assignment by Darden. The determination of the first question above stated must be resolved in favor of appellant. *Pollard* v. *Phœnix Insurance Company,* 63 Miss., 244.

On the discussion of the second question involved, namely, the matter of the collateral issue, learned counsel for the appellant, in the court below, relied upon the case of *Houck* v. *Wright,* 77 Miss., 476, s.c., 27 South., 616. The case is, however, not applicable. The contract sued on in that case was one made by the agent in his own name, the agent having assumed the payment to his principal, and having previously sold the piano insured to Wright upon his own account, and having assumed the payment of the same to his principal, Vose. It was a case in which Vose had no interest whatever, and any agreement existing between Vose and Houck did not affect the contract made by Houck with Wright. It was not necessary for Houck to resort to his agreement with Vose in order to make out his case against Wright. This transaction would have stood the test laid down by the books enabling a party to recover under the collateral contract when he could not have recovered under the original contract. It seems to be the view of appellee that simply because Darden's house was burned by fire set out from Freed's waste or dump plant, therefore Freed is under a liability to Darden or anybody else who appears and claims under him without restriction.

We do not regard the case of *Connolly* v. *Union Sewer Pipe Company,* 184 U. S., 540, as antagonistic to our view. For while it may be conceded that the language of the Illinois Act was broader than ours, in providing that it might be pleaded as a defense to any suit for the purchase price of any commodity bought from one violating the statute, nevertheless it is our view that our own statute is the same in intent. Furthermore, the court says, on p. 556 of the case cited, that had the statute been constitutional, the defendant could have

successfully pleaded a non-liability. The validity of our stat-
ute is not here in question.

  *J. W. Cutrer,* for the appellee.

It is insisted that the pleas are fatally defective, because they
do not aver that the subrogation agreement sued on was made
for any purpose relative to the business of the alleged trust and
combine stated therein. Section 3 of the act upon which
appellant especially relies, is as follows: "Every contract to
enter into or pursue any trust and combine, and every contract
made by another with any trust and combine, or with any mem-
ber of a trust and combine, for any purpose relative to the busi-
ness of such trust and combine, is void, and cannot be enforced
in any court." Not one of these pleas avers that the contract
sued on was in any way relative to the business of the trust
and combine complained of. It will be seen by reference to
the whole act that there are several steps necessary to be taken
by appellant before section 3 of the act can be of any avail
as a matter of defense in this suit. The section must be given
a reasonable interpretation, and with that in mind, it cannot be
said that all contracts made by such an insurer are void, any
more than it can be said that all contracts made by an insured
with such an insurer are void.

The limits of lines of demarcation fixed by the statute upon
and as between what contracts are void and what are not, is
that such and every contract and agreement made by an in-
surer, a trust and combine or a member thereof, with another
in a trust and combine or member thereof, shall be void and
nonenforceable so far only as such contract or agreement is for
a purpose relative to the business of such trust and combine.
Clearly the subrogation of the insurer to the right of the in-
sured, for a wrongful destruction of the property insured, is
not any purpose relative to any trust and combine. Subroga-
tion is a right arising out of and by operation of law, and is an
incident to the contract of indemnity. It will be understood

at the outset that appellee has been legally admitted to do business in the state in conformity to the laws thereof, and there is no question presented which might arise if a different state of facts existed.

Our contention is that the insurer having paid the loss is subrogated to the right of the insured regardless of any specific contract or agreement to that effect. The rules is thus stated by the supreme court of Missouri: "It is well settled law in this country that the insurer against fire of property which has been destroyed by fire communicated from a locomotive engine, will, upon payment for the loss, be subrogated to the extent of their payment, to the remedies of the insured as the owners of the property insured and destroyed, against the railroad company, for the loss." *Lumberman's Ins. Co. v. K. C., F. C. & M. R. R. Co.,* 50 S. W. Rep., 281.

In that case, the insurance company was seeking to enforce a right of action assigned to it by the insured against the railroad company, to which the insurance company had been subrogated and, said the court: "It is this right that is sought to be enforced in this action, and it follows that the right, tinctured with no wrong, must be sustained."

The following quotation is taken from Cooley's Briefs on Insurance, vol. 4, p. 389: "If the insurer has paid the loss, the fact that it might have successfully contested the claim under the policy and relieved itself from liability to the insured, does not affect its right of subrogation. The equity between the insurer and the insured is not matter with which the wrongdoer has any concern." In support of the text cited above, the following cases are cited: *U. S. v. Am. Tob. Co.,* 166 U. S., 468, 41 Lawyers' Ed., 1081; *Amazon Ins. Co. v. I. M. R. R.,* 1 Fed. Rep., 589; *Sun. Mutual Ins. Co. v. Miss. Val. Trans. Co.,* 17 Fed. Rep., 919; *Pease v. Quebec S. S. Co.,* 24 Fed. Rep., 285; *In re Harris,* 57 Fed. Rep., 243; *St. L., A. & T. R. Co. v. Fire Assn.,* 60 Ark., 325, 28 L. R. A., 83.

In the case of *Phœnix Ins. Co.* v. *Erie & Western Trans. Co.*, 117 U. S., 312, it is said (on page 321), in the opinion of the court: "From the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the assured the amount of the indemnity agreed on between them, is entitled by way of salvage, to the benefit of anything that may be received, either from the remnants of the goods or from damages paid by third persons for the same loss. But the insurer stands in no relation of contract or of privity with such persons. His title arises out of the contract of insurance and is derived from the insured alone, and can only be enforced in the right of the latter. In a court of common law, it can only be asserted in his name and even in a court of equity or admiralty it can only be asserted in his right. In any form of remedy the insurer can take nothing by subrogation but the rights of the assured." The court says further that the right of the assured "is not incident to the property in the thing insured, but it is only a personal right of the assured. . . . This is clearly shown by the fact that the insurer acquires a beneficial interest in that right of action in the proportion to the sum paid by him, not only in the case of total loss, but likewise in a case of partial loss and when no interest in the property is abandoned or accrues to him." See also in same connection, *St. L., I. M. & S. Ry. Co.* v. *Commercial Union Ins. Co.*, 139 U. S. Sup. Ct., 223, and particularly the language of the court on p. 235.

If there be any doubt as to the propositions already advanced, it is contended that the judgment of the court below was right and should be affirmed for the reasons stated in the third proposition heretofore formulated. That proposition is based upon the fact that the right of action asserted by appellee is independent of and arises from a source entirely dissevered from the insurance contract; that it is not in any way tainted because of any alleged unlawful conduct sought by the pleas to be imputed to appellee, being a right which accrued in favor

of a third person who was in no way connected or associated with or a party to any of the facts alleged by way of defense; that such right of action is maintainable by appellee, in the right of the assured, as assignee of such independent right of action vested in and maintainable by the assured, and which depends for its successful assertion upon the proof of a commission of a tort by the appellant, an issue entirely separate from or at the most collateral only to the original contract of insurance. It is quite uncontrovertible that the right of subrogation can be asserted and maintained without proof of the existence of any illegal trust and combine, such right and a recovery based thereon in no way relate to or involve any question concerning the business of any such trust and combine. The right to recover in this instance depends upon proof that the insured lost his property by fire by the wrongful act of appellant, and that appellee indemnified the insured on account of the said loss by paying him the amount thereof. The fact that an illegal trust and combine might have existed with respect to fixing rates for insurance would not and could not effect the right of the insured to recover of the appellant for the destruction of his property, nor could it nor would it afford any matter of defense as against the insured to prevent a recovery against him for his wrongful misconduct.

The right of appellee to recover is derivative. If a good cause existed in favor of the insured; such cause acquired by the insurer would not become tainted with illegality because in some respect perchance, dissociated from the cause of action with which it became vested, it had violated the laws of the state.

It is urged upon the attention of the court with much of tedious repetition, that the statute does not close the doors of the courts against every member of a trust and combine, but that the only class of cases in which the doors are closed and relief is denied, is in respect to any contract or agreement made by any trust and combine with any member of a trust and

combine for any purpose relative to the business of such trust and combine. It is the enforcement of such alleged contract and agreement, of the very contract and agreement made in the manner stated by the statute, and no other, which is denied by the statute. But in all other respects, the contracts of such persons are within the protection of the law, and enforceable by the courts. All other classes of contracts are beyond the bar of the statute. *Houck* v. *Wright,* 77 Miss., 476, s.c., 27 South., 616; *Woodson* v. *Hopkins,* 85 Miss., 171, s.c., 37 South., 1000; *Adler* v. *Searles,* 86 Miss., 410, s.c., 38 South., 209; *National Distilling Company* v. *Cream City Importing Company,* 39 Am. State Rep., 902.

In the case of *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S., 540, the appellee sued the appellant upon certain negotiable instruments executed on account of sewer pipe purchased by appellant from appellee. Appellant sought to defeat recovery on the ground that appellee was a member of a trust and combine unlawfully created contrary to the statute, known as the Sherman Anti-trust law and to the common law. A further defense was also interposed because the dealings set out in the pleadings were alleged to be contrary to the Illinois statute on the subject. It was not denied that a statute could be legally enacted broad enough to make illegal every character of unlawful conspiracy against trade and the accessories or auxilaries thereof, and also to make void every character of contracts entered into by any person or corporation offending against the terms of such a law. The United States supreme court deciding the question both upon the common law and the Sherman act, held that conceding for the purpose of that case, that the trust and combination complained of by appellant was illegal, nevertheless, the purchases by appellant had no connection with the alleged illegal combination, and, therefore, the question of the existence of such combination was entirely collateral to the right asserted by appellee against appellant; that the contract between appellee and appellant was in every sense collateral to

the alleged illegal agreements between appellee and other cor-
porations or associations, whereby an illegal combination was
formed to fix the price for the sale of sewer pipe, and that as
the action was *not to enforce the terms of such an agreement,*
the existence of a combination was entirely collateral to the
question of debt or liability, as in the case at bar. *Connolly
v. Union Sewer Pipe Co.,* 184 U. S., 540.

WHITFIELD, C. J., delivered the opinion of the court.

It is insisted by the learned counsel for the appellee that
the subrogation agreement and assignment arose out of an
agreement of the insured and assignor with appellee, the as-
signee, for no purpose relative to the business of the alleged
trust and combine; and *again it is insisted that the appellant
committed a tort, and the right of action, eo instante, vested in
a third person because thereof;* that said right was, by the
subrogation agreement sued on, transferred and assigned to ap-
pellee; *that such third person was in no way connected with
any of the acts or facts alleged by way of defense, and that
the right of action so vested in him is maintainable by appellee
as assignee of such independent right aforesaid;* and that
therefore the pleas are an answer to the declaration, and that
Laws 1900, pp. 125–127, ch. 88, are not shown to be any bar
to this suit. We cannot concur in all the criticisms made by
learned counsel for appellee of the provisions of this act, but
we think the first of the two propositions which we have stated
above is sound. The subrogation of the insurer to the right
of the insured for a wrongful destruction of the property in-
sured can certainly not be held to be "any purpose relative to"
the business of the trust of which the appellee was a conceded
member. Subrogation is a right arising out of and by the
operation of the law, and is an incident to the contract of in-
demnity. In Cooley's Briefs on Insurance, vol. 4, p. 389, it
is said, citing a great number of authorities: "If the insurer
has paid the loss, the fact that it might have successfully con-

tested the claim under the policy, and relieved itself from liability to the insured, does not affect its right of subrogation. The equity between the insurer and the insured is not matter with which the wrongdoer has any concern." In Sheldon on Subrogation, sec. 223, it is said: "This subrogation of the insurers to the remedy against the wrongdoer who has caused the loss which the insurers have stood is only to the remedies and rights of action which were vested in the insured, or which the insured might have succeeded in obtaining from the party at fault, subject to all the liabilities and duties which rested on the insured, even in favor of third parties. It is not an independent right of action in the insurers themselves, and not subject to any estoppel existing against the insurers in their own right. The insurers succeed merely to the means of redress which were possessed by the party whom they have indemnified against the party whose wrongful act caused the loss." In Cooley's Briefs on Insurance, vol. 4, p. 3898, it is said: "Though the right of subrogation is in some cases based on the clause in the policy providing for the assignment to the insurer of the cause of action against the wrongdoer (*Egan* v. *British & Foreign Ins. Co.,* 61 N. E., 1081), it is generally held that an assignment is not necessary to support the right" —citing a large number of cases. And again it is laid down in Cooley's Briefs on Insurance, vol. 4, pp. 3895, 3896, that "this right of subrogation does not depend on the presence of a special clause in the policy conferring the right, nor is the insurer's right of subrogation affected by the failure of the insurer to comply with the laws regulating insurance companies" —citing a number of authorities. And finally it is said in *Phœnix Ins. Co.* v. *Erie & Western Transportation Co.,* 117 U. S., 312, at page 321, 6 Sup. Ct., 750, at page 753, 29 L. Ed., 873, that "from the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the insured the amount of the indemnity agreed on between them, is entitled by way of salvage to the benefit of anything that may be

received, either from the remnants of the goods, or from
damages paid by third persons for the loss.   But the insurer
stands in no relation of contract or of privity with such per-
sons.   His title arises out of the contract of insurance, and is
derived from the insured alone, and can only be enforced in
the right of the latter.   In a court of common law it can only
be asserted in his name; and even in a court of equity or ad-
miralty it can only be asserted in his right.   In any form of
remedy the insurer can take nothing by subrogation but the
rights of the assured." From these authorities it seems to be
clear that on the facts of this case the appellee was entitled to
enforce against the appellant the right which the insured had
against the appellant, having paid the loss to the insured.
What the insurer has is just precisely the right of action which
the insured had, growing out of the appellant's wrongdoing.
The insurer's right to sue at all is wholly derivative, and it is
impossible to see, in this view of the matter, how this right
has anything to do with, or can be said to have any relation to
the business of the trust or combine.

But, again, it is earnestly insisted that the right of action
asserted by the appellee, the insurer, is independent of, and
arises from a source entirely distinct from, the insurance con-
tract.   It is a right which accrued in favor of a third person,
the insured, who was in no way connected with the trust or
combine.   Such right of action is maintainable by the insurer
only in the right of the assured, and it can only be successfully
maintained by proof of the commission of a tort by the ap-
pellant, which certainly presents an issue entirely collateral to
the original contract of insurance.   The insurer maintains this
right of the assured, if at all, quite independently of the stipu-
lation for subrogation in the policy of insurance.   He suc-
ceeds, if he does succeed, in the suit against the appellant, not
because of the form in which he sues as assignee under the
subrogation clause of the policy; but he has been substituted by
equitable principles to the right of the insured himself to re-

cover against the appellant, and in this view it certainly can-
not be claimed that that right of action is anything other than
wholly collateral to the contract of insurance.   The case of
*Connolly* v. *Union Sewer Pipe Co.,* 184 U. S., 540, 22 Sup.
Ct., 431, 46 L. Ed., 679, is claimed to be decisive in favor of
appellee on this point.   The supreme court in that case, after
holding that, even if the combination was illegal, nevertheless
the purchases by appellant had no connection with the alleged
illegal combination, and therefore that the question of the ex-
istence of such combination was entirely collateral to the right
asserted by the appellee against the appellant, and that the
contract between the appellee and the appellant was in every
sense collateral to the alleged illegal agreement of appellee and
other associations and corporations, whereby an illegal combi-
nation was formed to fix the price for the sale of sewer pipe,
and that as the action was not to enforce the terms of such an
agreement, the existence of a combination was entirely collateral
to the question of debt or liability on the part of the purchaser
of sewer pipe to the seller thereof.

We, however, prefer not to rest our judgment on this second
ground insisted on by learned counsel for appellee in this case,
but rather upon the ground first above stated.   The language
of our act of 1900 is exceedingly broad, and we do not find it
necessary in this case to affirm the judgment of the court below
on the ground secondly argued under the authority of *Connolly*
v. *Union Sewer Pipe Co.,* to-wit, that the contract of insurance
in this case is collateral to the trust agreement which relates
only to the fixing of rates.   The United States supreme court,
in a very recent case, *Chattanooga Foundry & Pipe Works* v.
*City of Atlanta,* 203 U. S. 390, said, in a case where the city
of Atlanta sued for threefold damages to business or property
authorized by Anti-Trust Act July 2, 1890, ch. 647, sec. 7, 26
Stat., 209 [U. S. Comp. St. 1901, p. 3202], in a case of viola-
tion of that act, that "the fact that the sale of the pipe was not
so connected in its terms with the unlawful combination as to·

be unlawful (*Connolly* v. *Union Sewer Pipe Co.,* 184 U. S., 540, 22 Sup. Ct., 431, 46 L. Ed., 679), in no way contradicted the proposition that the motives and inducements to make it were so affected by the combination as to constitute a wrong," and added that, "in most cases where the result complained of as springing from a tort is a contract, the contract is lawful and the tort goes only to the motives which led to its being made, as when it is induced by duress or fraud." We cite this by way of caution merely, and out of the same abundant caution prefer to rest our judgment in this case on the ground first hereinbefore set forth.

*Affirmed.*

MAYES, J., delivered the following concurring opinion:

This controversy arose under the law as it stood by virtue of the act of 1900, Laws 1900, p. 125, ch. 88. I concur in the opinion of the majority only to the extent that it reaches the result that appellees had the right to recover under the law as it was when this liability was incurred. I concur in the opinion in no other respect.