## HOME INS CO. *v.* HARTSHORN.

[91 South. 1.  No. 22472.]

1. INSURANCE. *Insurer's right of subrogation against third party who caused loss measured, by terms of clause providing therefor.*

   Where an insurance policy contains a clause providing that, on the payment by the insurer for the loss or destruction of the property insured, the insurer shall be subrogated to the insured's right to recover against any person whose act or neglect caused the loss or destruction of the property, the insurer's right of subrogation must be measured by the terms of the clause of the policy providing for it.

2. INSURANCE. *Insurer, to be subrogated to insured's right against third party who caused loss, required to make claim to insured that loss was so caused before payment of loss to insured.*

   In order for an insurance company to be subrogated to the rights of the insured upon the payment by it of the loss covered by a policy issued by the company to the insured, containing a provision that "if the company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this comapny shall on payment of the loss be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom and such right shall be assigned to this compaany by the insured on receiving such payment," the claim of the insurer that the fire was caused by the act or neglect of any person or corporation must be made to the insured at or before the payment to him of the loss by the insurer.

3. INSURANCE. *Word "salvage" defined.*

   The word "salvage" in the law of insurance includes damages paid by third persons for the loss of property covered by an insurance policy.

4. INSURANCE. *Insurer by making settlement entitling insured to salvage waived right of subrogation.*

   Where an insurance company in a settlement with the insured in a policy issued by it for the loss of the property insured by fire, agrees that the insured shall have all salvage, the company thereby waives its right of subrogation to the right of the insured to recover damages against any person by whose act or neglect the property was destroyed.

5. INSURANCE. *Extent to which insurer who has settled with insured may participate in amount recovered by insured against third party who caused fire.*

Where an insurance company settles with an insured, to whom it has issued a policy of insurance, for less than the value of the insured property destroyed and for less than it was insured by the policy issued, and the insured thereafter recovers judgment against a third person whose act or neglect caused the destruction of the property for the value thereof, the insurer is not entitled to any part of the money so recovered by the insured unless the amount paid by the insurer to the insured, together with that to be received by the insured under the judgment, less the amount expended by him in the recovery thereof, exceeds the value of the insured property destroyed, and then the insurer is entitled to participate only to the extent of such excess.

APPEAL from chancery court of Leflore county.
HON. G. ED WILLIAMS, Chancellor.

Action by the Tallahatchie Compress & Storage Company against the Home Insurance Company, in which the defendant filed a cross-bill against Mrs. J. B. Hartshorn. From decree sustaining demurrer to cross-bill, defendant appeals. Affirmed and remanded.

*R. L. McLaurin, T. C. Catchings,* and *T. G. Birchett,* for appellants.

The fourth ground of demurrer was the principal one relied on by the appellee, and inasmuch as the main argument in the instant case will revolve around this ground, we will repeat same: "Because the cross-bill shows that any claim that cross-complainant (appellant) may have had to the money in controversy is concluded by compromise."

On record page 16 will be found this clause, which is a clause in the policy: "If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall on payment of the loss be subrogated to the extent of such payment to all right of recovery by the insured for the loss

resulting therefrom and such right shall be assigned to this company by the insured on receiving such payment."

There was no written assignment taken and appellee contended that the failure to procure a written assignment, connected with the last clause in the receipt, and in consideration of said payment, the policy is hereby cancelled and surrendered, and the last clause in the check or draft for the settlement money and said policy is hereby cancelled and surrendered, taken in connection with the statement on the proof of loss, shown on record page 25, compromise settlement six thousand six hundred dollars assured to have all salvage, eliminates and extinguishes all subrogation claims.

The right of subrogation exists independent of any assignment to the person paying the loss or damage against the one whose act caused same. It is immaterial whether an express instrument of subrogation is obtained or not.

This court in the case of *Freed* v. *American Fire Insurance Company,* 90 Miss. 72, has fully discussed the law of subrogation applicable to such cases in this state. *Phoenix Ins. Co.* v. *Erie & Western Transportation Co.,* 117 U. S. 312, at page 321, 6 Sup. Ct. 750, at page 753, 29 L. Ed. 873.

Thus it will be seen that this court has distinctly held that an assignment is not necessary to support the right and that the right of subrogation does not depend on a special clause in the policy, but grows out of and is incident to the payment itself.

Appellee argued on the hearing for demurrer, and will so contend here, that subrogation not being reserved in the proof of loss, amounted to a waiver of this equity. Waiver in insurance is construed to be a voluntary relinquishment of a known right, and would this court construe the word *supra,* to be such a waiver.

Under the law, as laid down in the *Freed case, supra,* we find the insurer is entitled to be reimbursed from the remnants of the goods or from the damages paid by third persons for the loss. The assured, appellee, was permitted to retain the remnants of the goods, which must have had

a very substantial value to be accepted by her as a material matter of settlement, but we do not find anywhere in the record that there was any relinquishment of the subrogation right conferred by law. The argument of appellee based upon the receipt and draft clauses quoted *supra* to the effect that the policy was cancelled and surrendered upon the payment of the sixty-six hundred dollars and the retention of the salvage, that the subrogation right was lost and that these two instruments eliminated the subrogation clause in the policy, we contend that this is not sound.

The subrogation grows out of the payment and is not a part of the settlement. It is incident to the payment of the loss and an equity of reimbursement conferred upon the party paying against anything recovered from the party causing the loss. The effect of these words is simply this, that the right to recover for the lost cotton on the policy between the insured, appellee, and the insurer, appellant, is ended, and she is paid so far as the policy insures her against fire on her cotton. 5 Joyce on Insurance, page 5880.

From a consideration of the above authority it will be seen that in applying the doctrine of subrogation, technicalities which are not of an insuperable nature should be disregarded and the broad equities should be admissible between the parties. We stated as a proposition of law that the law abhors double payments and speculation at the expense of one who has done his share and complied with his agreements.

The relation between the appellee and the appellant in regard to the suit against the Compress Company and the collection of the damages for the damaged cotton is that of trustee, in this that the appellee is trustee for the insurer. The suit had to be brought in the name of the appellee.

In *Kansas City, etc., R. R. v. Blaker & Co.* Vol. 1, American & English Annotated Cases, page 883, we find the rule proceeds on the theory that the assured sustains towards

the insurer the relation of trustee, and is well supported by the authorities, citing a large number of authorities. The payment of the sum *supra* amounted to an equitable assignment of the sum paid. *New York C. & S. L. R. R. Co.* v. *Roper,* 36 L. R. A. (N. S.) 954, bottom left hand corner.

In Cooley's Briefs on the Law of Insurance, Vol. 3908, we find the general rule stated: "The general rule is that the right of the insurer to be subrogated to the rights of the insured against the person responsible for the loss extends no further than the amount the company was compelled to pay." Same authority, page 3913.

The failure to procure the assignment in writing does not affect the right to subrogation. Cooley's Briefs on the Law of Insurance, Vol. 7, supplement, page 1645, section 3898.

*Alfred Stoner* and *Gardner, McBee & Gardner,* for appellee.

The cross-bill did not allege that the sum of money recovered from the compress company, after paying the expenses of its recovery, plus the amount of insurance paid by appellant, was in excess of the value of the cotton destroyed.

All the authorities that we have found hold that, even though the insurance company pays the full amount of insurance stipulated for by the policy (which was not the case here) the assured must be fully indemnified before the assurer is entitled to subrogation. It is held and we shall cite numerous authorities under this paragraph showing, that the assured is entitled to deduct attorney's fee and all expenses of recovery, and that the net amount received by the assured must exceed the actual value of the property destroyed, before the insurer is entitled to recovery. 37 Cyc. 371; 27 Am. & E. Ency of Law (2 Ed.), 261; *Pool* v. *Ellis,* 64 Miss. 555, 1 So. 725, 25 R. C. L., page 1321; *Shawnee Fire Insurance Company* v. *Cosgrove,* 41 L. R. A. (N. S.) 719, and notes.

As we read the brief of appellant, it is there sought to be argued that subrogation is a right arising out of and by the operation of the law and that this right may not be superseded or controlled by the contract itself.

Our contention is that whatever right of subrogation existed in this case at any time, had its existence by the contract of the parties and that the insurance company had no greater and not less rights than such as are conferred upon it by. the contract of insurance. Subrogation may be either legal or conventional. Legal subrogation is allowed only in cases where the person advancing money to pay the debts of another stands in the position of surety or is compelled to pay the debt to protect his own rights. Conventional subrogation results from an agreement made either with the debtor or creditor that the person paying shall be subrogated. 27 A. & E. Ency. of Law, 202; *Wilkins* v. *Gibson,* 84 A. S. R. 205, 214, 27 A. & E. Ency. 203.

Subrogation cannot be invoked to override and displace the real contract of the parties. 37 Cyc. 367; *Union Mortgage Banking & Trust Co.* v. *Peters & Trezevant, Trustees, et al.,* 72 Miss. 1058, 1070.

In order to avail itself of subrogation under this clause, we contend that it was necessary for the Insurance Company to show: First, that it claimed that the fire was caused by the act or neglect of another; Second, that it made this claim to Mrs. Hartshorn; Third, that it made such claim at or before the time it paid the loss; Fourth, that at the time of making payment no express or implied contract was made with Mrs. Hartshorn waiving its right of subrogation. *House* v. *Gumble,* 78 Miss. 259; *McNeill* v. *Lee,* 79 Miss. 455.

We have asserted, second, that the claim should have been made to Mrs. Hartshorn, and third, that it should have been made at or before the payment of the loss. There is no allegation in the bill by which it can be inferred that any claim was ever made to Mrs. Hartshorn at any time before the filing of the cross-bill that the compress company caused the fire, nor is there anything in this record

to show that Mrs. Hartshorn had any idea of proceeding against the compress company at the time the settlement was made.

This particular subrogation clause of the insurance policy was before the court of errors and appeals of New Jersey, in the case of *Fire Association of Philadelphia* v. *Schollenger,* 94 Atl. 615. By that court it was held: "Whatever may be the extent of the right of subrogation residing in an indemnitor, under such a state of facts as the present case exhibits, in the absence of any agreement upon the subject between the indemnitor and the indemnitee, we see no reason for denying the power of the parties to curtail, or even to destroy it, by mutual consent if they see fit to do so. An agreement to that end runs counter to no provision of the written law, and is not opposed to any public policy of the state. The rights of the parties to this litigation, therefore must depend upon the meaning of the provision of the policy which deals with the matter of subrogation." *Fire Association of Philadelphia* v. *Schollenger,* 94 Atl. 615.

We have seen that at the time the compromise settlement was made, the only statement as to how the fire was caused, was that statement made by Mrs. Hartshorn that the cause of the fire was unknown to assured. No statement of any kind was made or claim asserted by the insurance company that the fire was caused by the act or neglect of any person at the time of the making of the compromise settlement. *Fort et al.* v. *Globe & Rutgers Fire Ins. Co.,* 173 N. Y. S. 595.

Its failure to assert such claim at or before the time when the payment was made, was a failure to comply with the condition upon which its right of subrogation depended. *Fire Association of Philadelphia* v. *Schollenger,* 94 Atl. 615. We do not stop to cite authorities that the parties having contracted for a policy in the form provided by the laws of the state of New York, are bound by such laws construing such policy for the laws of Mississippi have a similar provision. Secs. 5061, 5115, Hemingway's Code; *Com-*

*press & Storage Company* v. *Hartshorn,* 125 Miss. 662;
*Good* v. *Golden,* 72 Miss. 91-95; *Staples* v. *Fox,* 45 Miss.
667; *Howell* v. *Bush,* 54 Miss. 445.

The fourth ground of demurrer is: "Because the cross-bill shows that any claim that cross-complainant (appellant here) may have had to the money in controversy is concluded by compromise. The insurance company made this settlement on April 16, 1918. The fire occurred on March 13, 1918, and Mrs. Hartshorn was left not with a judgment but with a cause of action only against the Compress company.

The agreement on which she sued was an oral agreement. This oral agreement to store plaintiff's cotton in the brick compartment is denied by the defendant's witness. *Compress & Storage Company* v. *Hartshorn,* 125 Miss. 662-673. Her case presents a disputed question of fact in the first place and another proposition of law in the next.

The opinion rendered by Justice SYKES in this case on the liability feature of the case does not cite a single Mississippi case. These facts being true, can it be assumed that at the time the settlement was made by the insurance company with Mrs. Hartshorn, that her claim against the compress then had a present market value of fifty cents on the dollar?

On the other hand, does it not appear, in the light of this record, that the amount paid by the insurance company in a case in which it admits that its liability was twelve thousand dollars which it compromised for six thousand six hundred dollars that the insurance company at that time got the better of the bargain?

We contend that the insurance company is precluded by the compromise. The cross-bill clearly shows that at the time the proof of loss was submitted, the number of bales of cotton burned was not submitted in the proof of loss, nor was the grade or staple of this cotton or its value. There was no itemization of the loss, nor do such details appear anywhere in this record, but under the heading in the proper place for such details is written, compromise

settlement six thousand six hundred dollars, assured to have all salvage.

We contend that the insurance company is precluded from asserting its right of subrogation: First, because of the executed compromise contract, which contained no subrogation clause; Second, by the express terms of the compromise contract, which provides that the assured to have all salvage, the word salvage including damages paid by third persons for loss; and Third, that by the terms of such compromise contract and particularly of the draft and receipt, the policy and the subrogation clause therein is cancelled.

Does the Compromise Contract Preclude any Right of Action on the Policy? What is meant by compromise settlement? "A Compromise is an agreement between two or more persons who, to avoid a lawsuit, amicably settle their differences on such terms as they can agree on." 12 C. J. 314.

Settlement is defined: "A compromise for peace's sake of a claim the validity of which is denied; a contract between parties by means of which they ascertain the state of accounts between them and strike a balance; a determination by agreement." 35 Cyc. 1443. On these two words, compromise and settlement, hang the law of this case.

We submit that either word is strong enough to signify that by this agreement the parties had settled eleven claims and that neither had any claim against the other; otherwise the settlement shown by this record would be neither a "compromise nor a settlement." 12 C. J. 337.

We respectfully call the court's attention to the fact that the cases cited sustaining the text cover more than a page of notes, and cases are cited from practically all of the states of the union, and none to the contrary. Where an adjustment has been fully completed and agreed by both parties a new contract arises to pay the amount agreed upon as the result of the adjustment. 26 C. J. 413.

A compromise agreement to constitute a good defense to a suit upon an insurance policy, must be binding on both parties and of such a character as to operate as a satisfaction of the contract of insurance. 15 Fed. Cas. 1071; *Varet* v. *The New York Insurance Co.,* 7 Paige's Chancery Report 560; *Gaffey* v. *St. Paul Fire & Marine Insurance Co.,* 221 N. Y. 113, Ann. Cas. 1918B, 1041; see, also *Sears* v. *Grand Lodge of Ancient Order,* 57 N. E. 618.

We have stated that, by the express terms of the compromise contract, which provides that the assured is to have all salvage, the word salvage including damages by third persons for the loss. No exhaustive examination of the authorities on this question is necessary. In fact we are supported in this statement of the law by appellant's brief as to the meaning of the word salvage.

The authorities say that the very nature of the contract of insurance is of indemnity and the insurer is entitled by way of salvage to anything that might have been received, either from the remnants of goods or from damages paid by third persons for the same loss. 5 Joyce on Insurance, page 5880.

And finally it is seen in *Phoenix Insurance Company* v. *Erie & Western Transportation Co.,* 117 U. S. 312, at page 321, also 6th Sup. Ct. 750, at page 753, 29 L. Ed. 873, that from the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the insured the amount of the indemnity agreed on between them, is entitled by way of salvage to the benefit of anything that may be received, either from the remnants of the goods, or from damages paid by third persons for the loss. *Freed* v. *American Fire Insurance Co.,* 90 Miss. 72.

And so we say that having been entitled to the claim against the conpress company by way of salvage, that the insurance company when it compromised with Mrs. Hartshorn by a compromise agreement that provided that "assured to have all salvage" relinquished its right to any action for damages that might be thereafter brought by Mrs Hartshorn against the compress company.

SMITH, C. J., delivered the opinion of the court.

This is an appeal to settle the principles of the case from a decree sustaining a demurrer to a cross-bill. The Tallahatchie Compress & Storage Company filed an original bill, in which it alleges in substance that the appellee has recovered a judgment against it for thirteen thousand, one hundred and ninety-one dollars and fifty-four cents for the destruction of certain cotton by fire while stored in the complainant's compress and owned by the appellee; that the appellant, the Home Insurance Company, claims to be entitled to a portion of the amount due the appellee by the compress company on this judgment, and that the company is ready and willing to pay the money to the one entitled thereto, and prayed that both the appellant and the appellee be summoned to contest with each other for the right to the money due by the compress company on the judgment. Summons was issued accordingly. The Home Insurance Company filed an answer admitting the allegations of the original bill, and a cross-bill against the appellee, from which the following facts appear: In October, 1917, the appellant issued an insurance policy and a cotton certificate of insurance to the appellee in the sum of twelve thousand dollars on cotton in bales owned by the appellee and stored with the compress company. The cotton covered by this policy was destroyed by fire while stored with the compress company, and thereafter the appellee executed and filed with the appellant a proof of loss as required by the policy and certificate, in which proof of loss the actual cash value of the cotton insured was not set forth in the space provided therefor, but in lieu thereof was written the words:

"Compromise settlement six thousand six hundred dollars. Assured to have all salvage."

The appellant's agent at Greenwood, Miss., then executed and delivered to her a draft on the appellant for the sum of six thousand, six hundred dollars, for which the appellee executed a receipt setting forth:

That it "when paid, will be in full satisfaction of all claims and demands for loss and damages by fire which occurred on the 13th day of March, 1918, to the property described in policy No. Ctf. No. 290 issued at the Greenwood, Miss., agency of said company, and in consideration of said payment the policy is hereby canceled and surrendered."

This draft was indorsed and collected by the appellee, and also set forth that it would, when paid—"constitute full satisfaction of all claims and demands for loss and damage by fire which occurred March 13, 1918, to property described in policy No. Ctf. No. 290 issued at the Greenwood, Miss., agency and said policy is hereby canceled and surrendered."

After this settlement between the appellant and the appellee had been consummated, the appellee sued the compress company for the value of the cotton burned and recovered against it the judgment hereinbefore referred to. See *Tallahatchie Compress & Storage Co.* v. *Hartshorn,* 125 Miss. 662, 88 So. 278.

One of the provisions of the insurance policy is: "If this company shall claim that the fire was caused by the act or neglect of any person or corporation private or municipal this company shall on payment of the loss be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom and such right shall be assigned to this company by the insured on receiving such payment."

The appellee's right of recovery against the compress and storage company for the burning of the cotton was not assigned to the appellant, but we do not understand counsel for the appellee to contend that, by reason thereof alone, the appellant will be barred of the right to participate in the money due by the compress and storage company on the judgment recovered by appellee against it.

A demurrer interposed by the appellee to the appellant's cross-bill was sustained, and this appeal was granted to settle the principles of the case. The several grounds of

the demurrer will not be herein specifically set forth, but they raise, among other questions, those hereinafter discussed.

The ground upon which the appellant relies for a recovery is that, on the payment to the appellee of the six thousand six hundred dollars under the insurance policy, it became subrogated by reason thereof to the right of the appellee to recover against the compress and storage company for the loss of the cotton to the extent of the six thousand six hundred dollars so paid by it.

The right of the appellant to be subrogated to the appellee's claim for damages for the destruction of the cotton covered by the insurance policy being expressly provided for in the policy, its right thereto must be measured by and depends solely on the terms of the clause of the policy dealing therewith and hereinbefore set forth.

One of the requirements of this clause of the policy is that: "If this company shall claim that the fire was caused by the act or neglect of any person . . . this company shall on payment of the loss be subrogated," etc.,—the meaning of which necessarily is that the claim must be made to the insured at or before the time of the payment to the insured of the loss under the policy, and the reason for the requirement probably is that the insured may have an opportunity of taking into consideration when settling with the insurer the fact that the damages to be recovered from the person by whose fault the property was destroyed will go to him or to the insurer as the case may be. If such a claim can be made at any time, then any provision therefor in the policy would be useless, for the mere filing of a suit by the insurer against the person whose act or neglect caused the fire would be a sufficient claim that the fire was so caused. In the language of the court in *Fire Association of Philadelphia* v. *Schellenger*, 84 N. J. Eq. 464, 94 Atl. 615:

"It is plain from a reading of this part of the contract that the parties to it intended that the right of the insurer, in case it paid the loss should not be an absolute, but a

conditional one; the condition being that the insurer should 'claim that the fire was caused by the act or neglect' of some third person. We think it equally clear that the agreement contemplates that such claim should be made by the insurer to the insured at or before the time when it paid the loss. This appears from the fact that by its terms the right to subrogation, if it comes into existence at all, becomes complete when the payment is made. The language used is 'This company shall on payment of the loss be subrogated,' etc., 'and such right shall be assigned to this company by the insured on receiving such payment.' "

The cross-bill should, but does not, allege that such a claim was made to the insured at or before the time when the loss was paid.

The amount paid by the insurance company under its policy and certificate was about one-half of the loss sustained by the insured, and it is clear from the recitals of the proof of loss, the draft by which the payment was made, and the receipt therefor that the payment was the result of a compromise settlement in which it was expressly agreed that the insured was "to have all salvage," and the word "salvage" in the law of fire insurance, whatever it may mean in other connections, includes damages paid by third person for the loss of the property covered by an insurance policy. 5 Joyce on Insurance (2 Ed.), 5880; *Freed* v. *Am. Fire Ins. Co.*, 99 Miss. 72, 43 So. 947, 11 L. R. A. (N. S.) 368, 122 Am. St. Rep. 307; *Phoenix Ins. Co.* v. *Erie & Western Trans. Co.*, 117 U. S. 312, 6 Sup. Ct. 750, 29 L. Ed. 873. The appellee, therefore, by express agreement of the appellant became entitled to the whole amount that the compress and storage company might be called on to pay for the loss of the cotton, and consequently it will be unnecessary for us to decide what effect this compromise agreement, in event it had omitted all reference to the salvage, would have had upon the right of the appellant to subrogation under the terms of the policy.

There is one other question presented which may become important in event the appellant should amend its

cross-bill so as to eliminate the questions hereinbefore discussed, and that is that the appellant in no event will be entitled to participate in the money to be paid by the compress and storage company under the judgment here in question, unless the six thousand six hundred dollars paid by it to the appellee and the amount of the judgment, less the expense necessarily incurred by the appellee in obtaining it, exceeds the value of the cotton burned, in which event the appellee will have the right to participate in the fund to the extent of such excess. And since, in order for a complainant to recover, his right so to do must affirmatively appear from the bill of complaint, the appellant's cross-bill should, but does not, contain an allegation to the effect that the amount due by the compress and storage company on the judgment after deducting therefrom the expense incurred by the appellee in obtaining it, when added to the six thousand six hundred dollars paid the appellee by the appellant, will be in excess of the value of the cotton burned.

*Affirmed and remanded.*