Robert .R. WIMBERLY and Evelyn M. Wimberly, Petitioners,

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA (CNA) Group and New Hampshire Insurance Co., Respondents.**

Supreme Court of Tennessee.

July 2, 1979.

OPINION

FONES, Justice.

The Wimberly's restaurant was destroyed by fire, and they sustained an undisputed loss of $44,619.10. The fire was caused by Shelia McLemore's driving her automobile into the restaurant. Her insurance carrier paid the policy limits of $25,000. The Wimberlys had a total of $15,000 fire insurance coverage with defendant insurance companies.

The single question for determination is what are the subrogation rights of the two fire insurance companies when the total recovery of the insured from the tortfeasor and the fire insurance policies is less than the casualty loss.

The chancellor ruled that the insureds must be paid in full for their loss before subrogation rights arose in favor of their insurance carriers. The Court of Appeals reversed and held that the insureds and the insurers were entitled to an equal distribution of the proceeds received from the tortfeasor's insurance company. Although this is a case of first impression in Tennessee and authority exists to support the result reached by the Court of Appeals, we are persuaded that the better-reasoned cases hold that an insured must be made whole before an insurer is entitled to subrogation against a tortfeasor.

The fire insurance policies that the Wimberlys had with American Casualty and New Hampshire Casualty both contained the standard subrogation clause, which read:

"This company may require from the insured an assignment of all rights to property against any party for loss to the extent that payment therefor is made by this company."

Thomas F. Johnston, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, David P. Jaqua, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, for petitioners.

Leo Bearman, Sr., Leo Bearman, Jr., Memphis, for respondents.

On February 18, 1975, the Wimberlys signed a proof of loss and subrogation receipt, by which they subrogated their insurers "to all of the rights, claims and interests which the undersigned may have against any person or corporation liable for the

loss" and agreed to cooperate with their insurers in litigating or compromising their claims. On February 27, the insurers issued checks to the Wimberlys for $7,000 and $8,000, the full amount of the respective policies, for a total of $15,000. On April 16, 1975, Hartford Insurance Company, the insurer of McLemore, issued a check for $25,-000, payable to Robert R. and Evelyn M. Wimberly, American Casualty Company and New Hampshire Insurance Company. In late May all of the payees of the $25,000 check executed a joint release of McLemore in consideration of the settlement with her insurer.

The American Casualty Company received $3,921.53 and the New Hampshire Insurance Company received $4,482.94, for a total of $8,404.47 as a pro rata share, and the Wimberlys received $16,595.53 of the settlement payment. Subsequently, since they had to bear an uninsured loss of $13,-023.57, the Wimberlys sued to recover the $8,404.47 received by their insurers, with interest from April 16, 1975 and attorney's fees.

The Court of Appeals reversed the trial court judgment in favor of the plaintiffs and held that both the insured and the insurers were entitled to a pro rata share of the sum recovered from the third-party tortfeasor. The intermediate court relied upon a Florida decision, which we find to be inapposite to the facts and issues presented in this case. The Court of Appeals appears to have bottomed its decision on its conclusion that "[b]oth the plaintiffs and defendants were legally entitled to recover all of their loss from the tortfeasor but were prevented from making a complete recovery due to the inadequacy of funds received from tortfeasor. All had an equal right to recovery, and the standing of one was not greater than the other."

Defendants contended at trial that under the stipulated facts and applicable law, they are entitled to priority because of their subrogation rights against the recovery from the third-party tortfeasor. In support of this position, defendants relied on cases from other jurisdictions which have allowed the insurer to be first indemnified out of the proceeds recovered from the third-party tortfeasor when the insured had assigned to his insurer all rights of recovery against the tortfeasor to the extent of payment, even when the insured suffered a fire loss only partially covered by his policy. See *Peterson v. Ohio Farmers Ins. Co.*, 175 Ohio St. 34, 191 N.E.2d 157 (1963); accord, *Ervin v. Garner*, 25 Ohio St.2d 231, 267 N.E.2d 769 (1971); *Travelers Indemnity Co. v. Ingebretsen*, 38 Cal.App.3d 858, 113 Cal.Rptr. 679 (1974); *Shifrin v. McGuire & Hester Constr. Co.*, 239 Cal.App.2d 420, 48 Cal.Rptr. 799 (1966).

In *Peterson v. Ohio Farmers Ins. Co.*, supra, the Ohio Supreme Court considered a factually similar case, in which the insured also executed an assignment of all of the insured's rights of recovery against the third-party tortfeasor to the extent of the insurer's payment to the insured. The Court held that the outcome of the case was determined by the subrogation provisions of the insurance policy and the subrogation receipt signed by the insured upon settlement of the claim for loss, both of which had language identical to that found in the Wimberly's policy and subrogation receipt. The Court reasoned:

"The insured's conveyance of all right of recovery up to a certain limit, viz., the extent of the insurer's payment in settlement of the insured's claim, can mean only that the assignee is the owner of all the insured's rights of recovery until he is paid. The assignee, being the owner of all of the insured's right of recovery, must have priority in payment out of the funds recovered. Otherwise, the words 'all right of recovery' are without meaning." *Id.*, 191 N.E.2d at 159.

Although the Ohio Court gave weight to the fact that the insurer had cooperated and assisted in proceedings against the wrongdoer, the clear holding of the case was that the specific subrogation provision and the assignment of "all right of recovery" was interpreted to give the insurer priority to the proceeds received in the judgment recovery from the third party

tortfeasor. In a subsequent case, *Ervin v. Garner, supra,* moreover, the Ohio Court indicated that it would not concede that cooperation and assistance are prerequisites under the *Peterson* rule. *Id.,* 267 N.E.2d at 773. Rather, as in *Peterson,* the Ohio Court found, "we fail to see how the insured can specifically assign *each and all claims and demands* to the insurer concerning the single cause of action, limited only by the monetary amount which the insured has paid, and yet still retain any part of his claim or demand." *Id.* at 774.

We disagree with the position taken by the Ohio Court and find the results of these cases at odds with the principles of equitable subrogation. " 'Subrogation is a right which is founded upon equity and justice and accrues when one person for the protection of his own interests, pays a debt for which another is primarily liable.' " *Amos v. Central Coal Co.,* 38 Tenn.App. 626, 277 S.W.2d 457 (1954). The question for decision in this case, however, is whether the equitable operation of subrogation is modified by the terms of the underlying contract, so-called conventional subrogation.

In *Castleman Constr. Co. v. Pennington,* 222 Tenn. 82, 432 S.W.2d 669 (1968), this Court, speaking through Chief Justice Burnett, rejected the contention made by an insurance company that conventional subrogation is not governed by the same tests applied to find subrogation which arises by operation of law. The Court quoted with approval from Couch on Insurance 2d § 61:20 (1966):

" 'The doctrine of subrogation in insurance does not arise from, nor is it dependent upon, statute or custom or any of the terms of the contract; it has its origin in general principles of equity and in the nature of the insurance contract as one of indemnity. The right of subrogation rests not upon a contract, but upon the principles of natural justice.' " *Id.,* 432 S.W.2d at 675.

The Court viewed the distinction between legal and conventional subrogation only dispositive of "whether there is a right of subrogation in the first instance, rather

than in the enforcement of such right." *Id.* at 675.

■ In *Knaffl v. Knoxville Banking & Trust Co.,* 133 Tenn. 655, 182 S.W. 232 (1916), a surety sought to defeat the creditor's claim to the full amount of the debtor's partial payment by virtue of the terms of the bond agreement, which stated that in the event of default and payment of a claim "the said surety shall be forthwith subrogated *to all the rights* of the creditor." (Emphasis added.) The Court stated the well-established principle that the right of subrogation cannot be enforced until the whole debt is paid. The Court reasoned,

"A *pro tanto* assignment or subrogation will not be allowed. The reason is that subrogation is a creature of equity and will never be allowed to the prejudice of the creditor. [Citations omitted.]" *Id.* at 658, 182 S.W. at 233.

Consequently, we believe our resolution of this case must be guided by general principles of equity, to wit, that the insured must be made whole before subrogation rights arise in favor of the insurers.

■ The purpose of insurance subrogation is to prevent either the unjust enrichment of the insured through a double recovery or a windfall benefit to the principal tortfeasor by allowing the insurer to stand in the shoes of the insured once the insurer has fully indemnified the insured. *Skauge v. Mountain States Tel. & Tel. Co.,* 565 P.2d 628 (Mont.1977); 16 Couch, *supra,* § 61:18; 11 Appleman, Insurance Law and Practice § 6502 (1944). It is obvious that the insureds will not be unjustly enriched by recovering from their insurers on their fire policies as well as from the tortfeasor's insurer because the total indemnity of $40,-000 will not cover the casualty loss of $44,-619.10. The principal tortfeasor has not reaped a windfall, but rather has been released by the parties in consideration of a $25,000 settlement with her insurer. Finally, although defendant insurers must pay the full limits of their policies without reimbursement by way of subrogation, the insured loss was a risk that the insureds paid for them to assume. Had the tortfeasor

been judgment-proof and uninsured, defendants would still have been required to bear the loss to the full extent of the policies.

In *Garrity v. Rural Mut. Ins. Co.*, 77 Wis.2d 537, 253 N.W.2d 512, 516 (1977), the Supreme Court of Wisconsin refused to follow the *Peterson* rationale and held that "we regard the differentiation between subrogation and assignment in this situation as purely procedural." The Court correctly isolated the pivotal question, not considered by the Ohio Court in *Peterson*, whether the insurance contract had changed the rule that the surety's right of subrogation does not arise ordinarily until the debt is paid in full, and held that "because the contract here contains no language to the contrary, the normal rule of subrogation applies and the subrogee has no right to share in the funds recovered from the tortfeasor until the subrogor is made whole." *Id.*, 253 N.W.2d at 516. The Court simply recognized that the assignee under the subrogation receipt is a subrogee, and nothing more. As a subrogee, the insurer does not acquire the rights of its insured until the latter is made whole. "The assignment adds nothing to the rights vested in the surety by the doctrine of subrogation." *Id.* at 516, *quoting from* Couch, *supra*, § 61.105.

We believe that the rule followed in *Garrity* comports with the doctrine of subrogation as applied under Tennessee law and represents the approach followed in a plurality of jurisdictions. *See, e. g., Skauge v. Mountain States Tel. & Tel. Co., supra; Lyon v. Hartford Accident & Indemn. Co.*, 25 Utah 2d 311, 480 P.2d 739 (1971); *St. Paul Fire & Marine Ins. Co. v. W. P. Rose Supply Co.*, 19 N.C.App. 302, 198 S.E.2d 482, *cert. denied*, 284 N.C. 254, 200 S.E.2d 655 (1973); *Washtenaw Mut. Fire Ins. Co. v. Budd*, 208 Mich. 483, 175 N.W. 231 (1919); *Home Ins. Co. v. Hartshorn*, 128 Miss. 282, 91 So. 1 (1922); *Propeck v. Farmers' Mut. Ins. Ass'n*, 65 S.W.2d 390 (Tex.Civ.App. 1933); *Shawnee Fire Ins. Co. v. Cosgrove*, 85 Kan. 296, 116 P. 819 (1911).

The judgment of the Court of Appeals is reversed and that of the trial court reinstated. Costs are adjudged against appellees.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.