IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
_____

FILED

July 29, 1998

Cecil W. Crowson
Appellate Court Clerk

BENNY N. BLANKENSHIP,
and SHEILA BLANKENSHIP,

      Plaintiffs-Appellees,

and

BLUECROSS BLUESHIELD OF
TENNESSEE, as administrator
of TennCare for the State of
Tennessee,

      Plaintiff by Intervention/
      Appellant,

Vs.

ESTATE OF JOSHUA D. BAIN and
BOB WILLIAMS FORD
LINCOLN-MERCURY,

      Defendants.

Sumner Circuit No. 15078-C
C.A. No. 01A01-9709-CV-00492

_____

FROM THE SUMNER COUNTY CIRCUIT COURT
THE HONORABLE THOMAS GOODALL, JUDGE


David E. High of Nashville
John Pellegrin of Gallatin
For Appellees

Jerome J. Cohen of Nashville
For Appellant


*REVERSED AND REMANDED*

Opinion filed:


W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.


CONCUR:

ALAN E. HIGHERS, JUDGE

**HOLLY KIRBY LILLARD, JUDGE**

The sole issue in this case is whether the statutory subrogation and/or assignment provisions of the Tennessee TennCare Program are subject to the common law "made whole" doctrine.

Plaintiffs, Benny Blankenship and Sheila Blankenship, were enrolled in the TennCare program and paid monthly premiums for the health care coverage. On July 18, 1995, Benny Blankenship was seriously injured in an automobile accident due to the negligence of Joshua Bain, who was killed in the accident. Bain's estate was insolvent but there was a total of $125,000.00 liability insurance coverage available in his behalf. Blankenship's medical expenses totaled in excess of $30,000.00, and TennCare, through its administrator, BlueCross BlueShield of Tennessee, paid $20,713.83 of the said medical expenses.

The Blankenships filed a complaint against the estate and the owner of the vehicle Bain was driving to recover for the losses, injuries, and damages sustained. TennCare's administrator was allowed to intervene to pursue its subrogation claim, and the plaintiffs filed a "Petition to Determine the Validity and/or the Amount of the Alleged Subrogation Claim." The petition was treated as an action for declaratory relief pursuant to Rule 57, Tenn.R.Civ.P. It is undisputed that the plaintiffs' tort claims were clearly worth in excess of the policy limits settlement plaintiffs received. The trial court held that the administrator's right to recover pursuant to T.C.A. § 71-5-117 (Supp. 1997) was subject to the Blankenships first being made whole, and since they had not been made whole by virtue of the settlement, there could be no subrogation recovery by the administrator.

There are no material factual disputes; the sole issue is purely a question of law. Therefore, our review of the trial court's ruling is *de novo* with no presumption of correctness. ***Marriott Employees' Fed. Credit Union v. Harris***, 897 S.W.2d 723, 727 (Tenn. App. 1994).

The medical expense payments were made pursuant to Tennessee's "Medical Assistance Act of 1968," codified as T.C.A. §§ 71-5-101, *et seq.* (1995 & Supp. 1997). The 1968 Act is intended "to make possible medical assistance to those recipients determined to be eligible under this chapter to receive medical assistance that conforms to the requirements of title XIX of the Social Security Act [codified in 42 U.S.C. §§ 1396 *et seq.*(1992 & Supp. 1996)] and the regulations promulgated pursuant thereto." T.C.A. § 71-5-102 (1995).

T.C.A. § 71-5-117 provides in part, pertinent to the issue before us:

> **71-5-117. Recovery of benefits - State's right of subrogation - Assignment of insurance benefit rights - Commissioner authorized to require certain information identifying persons**

**covered by third parties - State's right of action. -** (a) Medical assistance paid to, or on behalf of, any recipient cannot be recovered from a beneficiary unless such assistance has been incorrectly paid, or, unless the recipient or beneficiary recovers or is entitled to recover from a third party reimbursement for all or part of the costs of care or treatment for the injury or illness for which the medical assistance is paid. To the extent of payments of medical assistance, the state shall be subrogated to all rights of recovery, for the cost of care or treatment for the injury or illness for which medical assistance is provided, contractual or otherwise, of the recipients against any person. Medicaid payments to the provider of the medical services shall not be withdrawn or reduced to recover funds obtained by the recipient from third parties for medical services rendered by the provider if these funds were obtained without the knowledge or direct assistance of the provider of medical assistance. When the state asserts its right to subrogation, the state shall notify the recipients in language understandable to all recipients, of recipient's rights of recovery against third parties and that recipient should seek the advice of an attorney regarding those rights of recovery to which recipient may be entitled. . . .

(b) Upon accepting medical assistance, the recipient shall be deemed to have made an assignment to the state of the right of third party insurance benefits to which the recipient may be entitled. Failure of the recipient to reimburse the state for medical assistance received from any third party insurance benefits received as a result of the illness or injury from which the medical assistance was paid may be grounds for removing the recipient from future participation in the benefits available under this part; provided, that any removal from participation shall be after appropriate advance notice to the recipient and that the provider of service shall not be prevented from receiving payment from the state for medical assistance services previously furnished the recipient, and that nothing herein shall require an insurer to pay benefits to the state which have already been paid to the recipient.

42 U.S.C. § 1396a (Supp. 1998) states in pertinent part:

**1396a. State plans for medical assistance**

**(a) Contents**
     A State plan for medical assistance must --

                    *              *              *

**(25)** provide --

**(A)** that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties (including health insurers, group health plans (as defined in section 607(1) of the Employee Retirement Income Security Act of 1974 [29 U.S.C.A. § 1167(1)]), service benefit plans, and health maintenance organizations) to pay for care and services available under the plan, including--
          (i) the collection of sufficient information (as specified by the Secretary in regulations) to enable the State to pursue claims against such third parties, with such information being collected at the time of any determination or redetermination of eligibility for medical assistance, and
          (ii) the submission to the Secretary of a plan (subject to the approval by the Secretary) for pursuing claims against such

third parties, . . . .

**(B)** that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability;

Relying primarily upon the holding in ***Wimberly v Amer. Cas. Co.***, 584 S.W.2d 200 (Tenn. 1979), the Blankenships assert that the administrator is not entitled to its subrogation claim until they have been made whole. In ***Wimberly***, two fire insurance companies sought to enforce their subrogation rights under their fire insurance policies issued to the plaintiff, Wimberly. Wimberly's restaurant was destroyed by fire that was started after another party had driven her automobile into the restaurant. The automobile driver's insurance carrier paid Wimberly its policy limits of $25,000.00, but it was undisputed that the loss caused by the fire was $44,619.00. Wimberly's insurance companies paid $15,000.00, and sought to recover the amount pursuant to the subrogation provision of their policies and settlement instruments. The Court noted that the doctrine of subrogation had its origin in general principles of equity, and under equitable principles an insured must be made whole before subrogation rights arise in favor of the insured. ***Id***. at 203. The Court held that this principle is applicable to contractual subrogations. ***Id***. at 204. In the instant case, the trial court extended the principle to statutory subrogation because T.C.A. § 71-5-117 contains no statutory exception to the "made whole" doctrine, and held that the statutory interest of the administrator would be subject to the Blankenships being first made whole.

We must respectfully disagree. Statutes are to be interpreted so as to give effect to the ordinary meaning of the language used by the legislature. ***Ganzevoort v. Russell***, 949 S.W.2d 293, 296 (Tenn. 1997); ***Chapman v. Sullivan***, 608 S.W.2d 580, 581-82 (Tenn. 1980); ***see also Henry v. White***, 250 S.W.2d 70, 72 (Tenn. 1952) ("If the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction."). In ***Wimberly***, there was no statute mandating subrogation. In the instant case the statute specifically provides for subrogation, and the subrogation provision is in the statute because of the mandate by the federal government. The statute states: "To the extent of payments of medical assistance, the state ***shall be subrogated to all rights of recovery***, for the cost of care or treatment for the injury or illness for which medical assistance is provided. . ." T.C.A. § 71-5-117 (a). (emphasis added). The language employed by the legislature in this statute is clear and unequivocal. In the instant case,

4

the legislation was passed to provide the medical assistance in conformance with the requirements of the Social Security Act. The act mandates that the state take the necessary steps to pursue the legal liability of third parties. The legislature, in responding to this requirement, mandated that "the state shall be subrogated to all rights of recovery." T.C.A. § 71-5-117 (a). There is nothing in the statute to indicate that this mandate is subject to the recipient of the medical benefits being made whole.

In *Castleman v. Ross Engineering, Inc.*, 958 S.W.2d 720 (Tenn. 1997), the Supreme Court considered enforcement of a subrogation claim for benefits paid to an employee where fault was attributed to the employee and to the employer. The employee acknowledged that the employer's insurance carrier has a statutory subrogation claim for benefits paid under the workers compensation law, but asserted that this claim is subject to the principles of equitable subrogation and is not enforceable unless the employee was made whole. In answer to this assertion, the Supreme Court said:

> The statute creating the subrogation claim does not by its terms condition the claim upon the employee obtaining a full recovery of damages sustained. The subrogation lien attaches to "the net recovery collected" and secures the amount "paid" by the employer or the amount of the employer's "future liability, as it accrues." It appears that, under the statute, the subrogation lien attaches to any recovery from the tortfeasor "by judgment, settlement or otherwise." Consequently, even if under equitable principles of subrogation the employer was not entitled to assert the subrogation lien, the statute specifically creates that right.

*Id.* at 724 (internal citation omitted).

This Court has previously recognized the similarity between Tennessee's workers' compensation statute and Tennessee's Medicaid statute. *See Hughlett v. Shelby County Health Care Corp.*, 940 S.W.2d 571 (Tenn. App. 1996). Insofar as subrogation is concerned, there is no meaningful distinction between the statutes. *Id.* at 574-75. Both workers' compensation subrogation and TennCare subrogation are mandated by statute. Neither statute makes reference to the "made whole" doctrine, and we are not at liberty to add this language to the legislative enactments. Therefore, we must reverse the trial court's judgment which refuses to recognize the subrogation claim.

The trial court also held that "if Blue Cross Blue Shield had an enforceable and valid subrogation claim regarding the settlement proceeds, their claims would be subject to the reasonable, necessary, and ordinary one-third contingent attorney's fees incurred by the Blankenships and pro rata litigation expenses incurred by the Blankenships pursuant to T.C.A.

5

§ 71-5-117 (c)."

Although no issue is presented for review concerning the trial court's holding regarding attorney's fees, we will consider the trial court's ruling in view of our decision concerning the issue presented for review. Tennessee Code Annotated § 71-5-117 (c) provides:

> The right of subrogation by the state to the recipients' right to recovery shall be subject to ordinary and reasonable attorney fees; provided, that further, where a recipient has retained an attorney, the attorney shall not be considered liable unless the attorney has notice from the state of the state's claim of subrogation prior to disbursement of the funds to the recipient.

The administrator asserts that this language is not terminology requiring payment of attorney's fees out of the subrogation claim but provides for priority of payment. The administrator argues that the provision should be construed so that the state is entitled to subrogation claim after the recipient's counsel receives the ordinary and reasonable fees out of the total recovery. We must respectfully disagree. We find no ambiguity in the language of the statute which explicitly provides that the *state's right of subrogation* is subject to the ordinary and reasonable attorney's fees.

Accordingly, the judgment of the trial court declaring that the Blankenship recovery is not subject to the administrator's subrogation claim is reversed. The case is remanded to the trial court for a determination of the amount of any attorney's fees and expenses to be charged to the subrogation claim. Costs of the appeal are assessed to the appellees.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**