IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2001 Session

## JOHNETTA PATRICE NELSON, ET AL. v. INNOVATIVE RECOVERY SERVICES, INC.

Appeal from the Chancery Court for Davidson County
No. 98-2690-III      Ellen Hobbs Lyle, Chancellor

———————

No. M2000-03109-COA-R3-CV - Filed November 21, 2001

———————

This is a declaratory judgment action by Ruby Nelson against Innovative Recovery Services, Inc. ("IRSI"), subrogation recovery agent for Tennessee Coordinated Care Network, d/b/a Access ..MedPLUS ("TCCN"), a health maintenance organization under TennCare. TCCN paid $6,266.75 in medical expenses for Ruby Nelson and, under TennCare statutes, had a subrogation interest in this amount as to any third party recovery by Ms. Nelson. The Complaint asserts that TCCN is liable to attorneys for Ruby Nelson for attorney's fees in the amount of one-third of the subrogation interest. The Chancellor held TCCN not liable for attorney's fees to the attorneys representing Ruby Nelson, and we affirm the judgment of the Chancellor.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and FRANK G. CLEMENT, JR., SP. J., joined.

Robert L. Whitaker, Nashville, Tennessee, for the appellants, Johnetta Patrice Nelson and Ruby Nelson.

Rhonda M. Whitted, Nashville, Tennessee, for the appellee, Innovative Recovery Services, Inc.

### OPINION

On November 23, 1996, Ruby Nelson was injured in an automobile collision with a vehicle driven by Scott M. Hann.[1] TCCN paid a total of $6,266.75 in medical expenses for Ms. Nelson as a result of the collision. Under TennCare statutes, TCCN was entitled to subrogation in claims against third parties for its payments of medical expenses.

---

[1] Passengers Johnetta and William Nelson also had claims against Hann, but only the claim of Ruby Nelson is involved in this appeal.

Ms. Nelson employed the Law Office of Bart Durham to represent her in her claim against Scott M. Hann under a contingent fee agreement, which provided for an attorney's fee of one-third of the amount of any recovery.

IRSI had been, since August 25, 1997, designated by TCCN as its agent for subrogation recovery services, and the Law Office of Bart Durham was so advised by letter of August 28, 1997. On February 9, 1998, without notifying TCCN or IRSI, Ruby Nelson and her attorneys, the Law Office of Bart Durham, entered into a voluntary, full and final settlement with Scott M. Hann in the amount of $25,000.00. On February 11, 1998, counsel for Ruby Nelson informed IRSI for the first time, by telephone, that Ms. Nelson had been injured in an automobile collision and requested the amount of the State's TennCare subrogation interest. IRSI informed the Law Office of Bart Durham that they were not authorized to represent TennCare's subrogation interest in such third-party litigation since all such subrogation matters were to be handled by IRSI. The Law Office of Bart Durham then deducted its attorney's fees (in the amount of one-third of the total $25,000.00 recovery realized in the settlement with Hann), deposited TCCN's $6,266.75 of the settlement proceeds in a trust account, disbursed the remainder of the recovery to Ruby Nelson and filed this suit for declaratory judgment as to whether or not Ms. Nelson was entitled to recover one-third of the $6,266.75 held in trust as reimbursement for attorney's fees she paid to the Law Office of Bart Durham for recovery of this money belonging to TCCN.

In granting summary judgment to IRSI, the trial court held:

1.      There are genuine issues of material fact whether Ruby Nelson was made whole by the settlement with the third party tort feasor.
2.      However, because the Defendant instructed the Plaintiffs attorney not to represent the Defendant's subrogation lien, and gave adequate notice that there was no agreement for representation by the Plaintiff's attorney and that no express or implied contract existed between the Defendant and the Plaintiff's attorney, the subrogation interest shall not be reduced by attorney fees or costs.
3.      Further, in light of the recent amendment to T.C.A. 71-5-117, and because the action was settled between the Plaintiff and the third party tort feasor without notification or consent of the Defendant, the subrogation interest is not subject to the make whole doctrine.

Ruby Nelson appealed asserting the issues to be:

1.      Does the "made whole" doctrine apply to a TennCare subrogation claim arising prior to the Tennessee Supreme Court's opinion in Blankenship v. Estate of Bain?
2.      If the "made whole" doctrine does not apply to a TennCare subrogation claim arising prior to the Supreme Court's opinion in Blankenship v. Estate of Bain, does TCA §71-5-117 apply?

Appellee, IRSI, raises additional issues by questions:

1. Under state TennCare statutes, does the equitable "make whole" doctrine apply to the State's subrogation interest in third party recoveries in personal injury actions prior to *Blankenship v. Estate of Bain* when the State does not consent to or participate in the settlement between the plaintiff and the tortfeasor?

2. Does the May 24, 2000 amendment to the TennCare statute set forth in *Tenn. Code Ann*. Sec. 71-5-117 provide that a personal injury plaintiff's attorney fees and costs are to be deducted from the State's subrogation interest when the record establishes that the State elected to represent its own interest and expressly rejected representation by plaintiff's attorney in the matter?

THE "MAKE WHOLE" DOCTRINE

The "make whole" doctrine in Tennessee is progressively developed by *Wimberly v. American Casualty Company of Redding, Pennsylvania*, 584 S.W.2d 200 (Tenn. 1979); *Eastwood v. Glenn Falls Ins. Co.*, 646 S.W.2d 156 (Tenn. 1983); *York v. Sevier County Ambulance Authority*, 8 S.W.3d 616 (Tenn. 1999); and *Blankenship v. Estate of Bain*, 5 S.W.2d 647 (Tenn. 1999).

In discussing the "made whole" doctrine adopted in *Wimberly*, the Supreme Court held in *Blankenship*:

> A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal subrogation"), or by application of a statute ("statutory subrogation"). It is based on two fundamental premises: 1) that an insured should not be permitted recovery twice for the same loss, which would be the potential result if the insured recovers from both its insurer and a tortfeasor; and 2) that the tortfeasor should compensate the insurer for payments the insurer made to the insured. *York v. Sevier County Ambulance Auth.*, 1999 WL 1051166 (Tenn. 1999).

> The Blankenships, relying on our decision in *Wimberly*, have maintained throughout these proceedings that an insurer must receive full compensation for his or her loss, i.e., be "made whole," before an insured is entitled to assert a claim for subrogation. In *Wimberly*, the insured suffered property damage of $44,619 due to a tortfeasor's misconduct. The insured recovered $25,000 from the tortfeasor's insurance policy and $15,000 under its own insurance policy. The insurance companies enforced contractual subrogation rights and received pro rata shares from the $25,000 the insured had received from the tortfeasor's policy.

We held that the insurance companies were not entitled to subrogation because the insured had not been "made whole" for his loss. *Wimberly*, 584 S.W.2d at 202. Our holding was guided by "general principles of equity:"

> The doctrine of subrogation in insurance does not arise from, nor is it dependent upon, statute or custom or any of the terms of the contract; it has its origin in general principles of equity and in the nature of the insurance contract as one of indemnity. The right of subrogation rests not upon a contract, but upon the principles of natural justice.

*Id.* at 203 (quoting *Castleman*, 432 S.W.2d at 675). Applying these principles, we determined that there is no equitable basis for allowing subrogation where an insured has not been made whole because there simply is no risk that the insured may recover twice for the same loss. Moreover, we concluded that a potential loss incurred by the insurer who is not reimbursed by way of subrogation is a risk the insurer has been paid to assume. *Id.* at 203.

*Blankenship*, 5 S.W.3d at 650-51.

If the *Wimberly-Eastwood-York-Blankenship* "made whole" doctrine were otherwise applicable in this case, it would face a fatal flaw in that the record before this Court does not establish whether or not Ruby Nelson was "made whole".

In *Wimberly*, it was undisputed that the total recovery from the tortfeasor and the insured's fire insurance policies was less than the total casualty loss. Thus, the proof conclusively established that the insured had not been "made whole," and the insurer's subrogation interest could not be enforced.

In *York*, an agreed settlement of $130,000 to each of two plaintiffs was made, with Blue Cross asserting a $19,149.97 medical payment subrogation interest relative to one of the settling plaintiffs, Brian York. The supreme court observed in footnote: "The trial court specifically found that Brian York's damages from the injuries sustained in the accident exceeded the $130,000 settlement and judgment." *York*, 8 S.W.3d at 618 n.2. Brian York, thus not having been "made whole" in his recovery, was not subject to the Blue Cross subrogation interest.

Likewise, in *Blankenship*, the supreme court observed: "Bain had liability insurance coverage in the amount of $125,000, but his estate was otherwise insolvent. Although the suit was settled for the limit of Bain's policy, the trial court found that the Blankenships would have been entitled to recover damages well in excess of $125,000." *Blankenship*, 5 S.W.3d at 649. Thus, the $20,713.83 medical expense payment subrogation interest of Blue Cross Blue Shield was not recoverable because the Blankenships had not been "made whole".

In the underlying tort case between Ruby Nelson and Scott Hann, no finding of fact is made as to whether or not Ruby Nelson is "made whole" by the $25,000 settlement. Indeed, in this declaratory judgment act, the Chancellor held, "there are genuine issues of material fact whether Ruby Nelson was made whole by the settlement with the third party tortfeasor." Whatever may be the rule elsewhere, persuasive authority in Tennessee establishes that the burden of proof rests upon the insured to prove that she has not been made whole. In *Tennessee Farmers Mutual Insurance Co. v. Farmer*, No. 03A01-9610-CH-00327, 1998 WL 695637 (Tenn. Ct. App. Aug. 20, 1998), it is held:

> The Chancellor held that the insurer had the burden of proof to establish that its insured had been made whole, in order to recover its subrogation claim, and that it had not sustained that burden. We respectfully disagree. In none of the cases discussing the "full recovery" doctrine it is suggested that the insurer has the burden of proof. The policy provisions, together with the contractual agreements executed upon advancement of medical expenses, establish a *prima facie* case. To defeat the right of subrogation, the insured must then affirmatively show [if the doctrine is applicable] that she was not made whole.

*Id.* at *3; *See* Tenn. S.Ct. R. 4.

The record before the Chancellor is replete with assertions by Ms. Nelson that the $25,000 settlement represented the policy limits of Scott Hann and that he was otherwise insolvent. No proof, however, exists to support these assertions. In addition, all that is shown by the record as to Ms. Nelson's loss are lost wages in an approximate amount of $3,040.00 and the payments by TCCN totaling $6,266.75, paying all medical expenses.[2]

Prior to the February 9, 1998 settlement between Ruby Nelson and Scott Hann, negotiated by the Bart Durham Law Offices, TCCN was not even aware that an automobile accident had occurred triggering a potential subrogation claim. It had simply paid the medical bills of $6,266.75. TCCN was not given the opportunity of investigating the solvency of Scott Hann or, indeed, the solvency of the owner of the car driven by Scott Hann, one Kevin P. Bursk, who was dismissed from liability as a part of the settlement. Generally, if an insurer claiming subrogation did not participate in the settlement negotiations between the insured and the third party tortfeasor and waived no rights, its subrogation claim must be honored. *Aetna Cas. & Sur. Co. v. Tennessee Farmers Mut. Ins. Co.*, 867 S.W.2d 321, 323 (Tenn. Ct. App. 1993). The subrogation interest, however, can be defeated by the "made whole" doctrine provided that the insurer and the insured have agreed that the insured was not made whole by the tort recovery or the underlying facts are clear that the recovery did not make the insured whole. *Tennessee Farmers Mut. Ins. Co.*, 1998 WL 695637. Obviously, no agreement exists between Ms. Nelson and TCCN that she was not made whole, and the evidence before the Court does not affirmatively show that she was not made whole.

---

[2] In the interpleader complaint medical expenses of $28,500 are asserted. The record does not show that she paid any medical expenses as only the $6,226.75 paid by TCCN is supported by the evidence.

In *Wimberly*, the Tennessee Supreme Court adopted the rule laid down in *Garrity v. Rural Mutual Insurance Co.*, 253 N.W.2d 512 (Wis. 1977). While *Garrity* represented the plurality approach among jurisdictions to the "made whole" doctrine, it spawned an immediate dilemma in Wisconsin evidenced by *Rimes v. State Farm Mutual Automobile Insurance Co.*, 316 N.W.2d 348 (Wis. 1982).

Rimes and his wife were injured in an automobile accident involving several vehicles. One defendant was insured for $300,000, and a second defendant was insured for $50,000. Rimes was insured by State Farm. Medical expenses in the total amount of $9,649.90 were supplied by State Farm with subrogation rights as to the third parties. An agreed settlement with the tortfeasors resulted in a $125,000 payment to Mr. and Mrs. Rimes. State Farm asserted its $9,649.90 subrogation interest, and Rimes defended on the basis that the $125,000 settlement had not made them whole.

Having no ready answer to this dilemma, the trial court conducted a two day, non-jury trial as to the amount of damages suffered by the Rimes. The court held that the Rimes had suffered $300,433.54 in damages and denied the State Farm subrogation interest on the basis that the Rimes had not been "made whole" under the *Garrity* doctrine. A deeply divided Wisconsin supreme court affirmed the judgment. The majority accepted, as sound law, a bifurcated procedure in an accident case where liability and degrees of liability were disputed.

The plaintiffs, facing the possibility of a successful contributory negligence defense, accepted the $125,000 settlement. Then, because of their dispute over the State Farm subrogation interest, they were allowed to try their total damages non-jury, shielded from all liability perils. The trial judge found their damages to be over $300,000, and since the $125,000 settlement was less than the amount of their damages, the State Farm subrogation interest was foreclosed. The majority of the Rimes' court reasoned:

> State Farm also argues that, had the case gone to a verdict before the jury and had the total damages returned been $125,000, which sum included the $9,649.90 for medical expenses incurred in the first year after the accident, State Farm would clearly have been entitled to recover the latter amount as its claim in subrogation. While that is undoubtedly true, that fact is irrelevant, because, had such been the result of the trial, we would be obliged to conclude that the damages found by the jury made the plaintiff whole. Rimes, unless he paid over the amount of State Farm's claim, would have reaped a double recovery. The medical payments were made long before trial; and were Rimes to keep all the proceeds of the judgment plus the medical payments, he would have been made whole plus the medical payments previously received. This he may not do under the equitable principles of subrogation. The verdict, under the facts hypothesized by State Farm, would have advised the trial court that the sum of $125,000 made the plaintiff whole. The parties here, however, by their stipulation determined to forego a jury verdict as the test of wholeness. It is clear then that a payment of $125,000, unless that sum had been

arrived at by a jury whose intent was to make the plaintiff whole, was irrelevant. Under the facts of this case, the payment of $125,000 was the price that the defendant tortfeasors were willing to pay to avoid the risk of greater exposure; and it was the sum that Rimes was willing to accept. It has nothing to do with the determination of whether Rimes was made whole.

*Rimes*, 316 N.W.2d at 354-55.

Justices Coffey and Steinmetz, in dissent, decried the results of this mini-trial as barring a subrogation interest in all settlements where the subrogation interest was not contemplated by the parties to the settlement, even in cases where questionable liability impelled the subrogor plaintiff to accept discretion as the better part of valor. Said Judge Steinmetz:

A spector arises from the court's ruling that the insured must be made whole before a subrogor has any right of recovery. The issue becomes when is the insured made whole? Is it when the jury makes an award? I would assume so. The majority implies that never in a settlement is a person made whole since it is recognized purely as a compromise and is not the equivalent of being made whole. Therefore, all settlements in the future must determine within them an admission of wholeness or be subject to additional mini-trials.

*Id.* at 362.

In the case at bar, TCCN never had the chance to negotiate with the insured relative to its subrogation claim because the claim in its entirety was settled by Ms. Nelson before TCCN ever knew that a claim existed.

The record in this case discloses only the $25,000 settlement and is devoid of any proof, or any finding of fact, by the trial court accepting the settlement as to whether or not Ms. Nelson was "made whole" thereby. This burden of proof rests upon the plaintiff. The requirements of the "made whole" doctrine of *Wimberly, York* and *Blankenship* have not been established, and Ms. Nelson's appeal must fail. *See Tennessee Farmers Mut. Ins. Co.*, 1998 WL 695637.

Since the "made whole" *Blankenship* rule is inapplicable under the facts of this case, it stands in exactly the same position as *Green v. Innovative Recovery Services, Inc.*, 42 S.W.3d 917 (Tenn. Ct. App. 2000).

It has long been settled by *Travelers Insurance Co. v. Williams*, 541 S.W.2d 587 (Tenn. 1976), that an attorney representing a plaintiff, whose own insurance company has a subrogation interest against third parties, is not entitled to an attorney's fee from the subrogation interest unless the insurance company has expressly or impliedly employed him to pursue the subrogation interest. *See also Boston, Bates & Holt v. Tennessee Farmers Mut. Ins. Co.*, 857 S.W.2d 32 (Tenn. 1993). The record in the case at bar negates any such express or implied agreement, and, in fact, like the situation in *Green*, Plaintiff's attorney "had been expressly informed that the insurer did not desire

his services, and that it was prepared to protect its own subrogation interest. Under the circumstances, there was no contractual relationship between [Plaintiff's attorney] and TennCare that would entitle him to collect the attorney's fees he requests." *Green,* 42 S.W.3d at 920.

In view of our holding as to the "made whole" doctrine, it is not necessary to consider the impact, or the possible retroactivity, of Chapter 807 of the 2000 Public Acts of the State of Tennessee, effective May 24, 2000, whereby Tennessee Code Annotated section 71-5-117 was amended in a manner that expanded the protection of TennCare subrogation interest, apparently in response to *Blankenship,* which had been decided by the supreme court on November 29, 1999.

The judgment of the Chancellor is in all respects affirmed, and the case is remanded for such further proceedings as may be necessary.

Costs of this cause are assessed against Appellant, for which execution may issue.

_____
WILLIAM B. CAIN, JUDGE