## JOHN H. AMOS v. CENTRAL COAL COMPANY.—
## 277 S. W. (2d) 457

Middle Section.  November 5, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

E. A. Langford, of Cookeville, John W. Gill, of Montterey, for appellant.

Lewis S. Pope, Farris, Evans & Evans, and James Clarence Evans, all of Nashville, for appellee.

HOWELL, J.   The bill in this case was filed by John H. Amos in the Chancery Court of Putnam County, Tennessee, against G. E. Harrison, Reconstruction Finance Corporation, Central Coal Company and E. J. Davis and involves the rights and interests of the parties in lands lying in Putnam and Cumberland Counties in Tennessee. Demurrer, answers and amended and supplemental bills were filed and the case was heard by the Chancellor upon oral testimony and exhibits. The defendant did not offer any proof.

Upon the hearing the Chancellor filed a written memorandum finding the facts and this finding was embodied in the decree in favor of the complainant which has been appealed from to this Court.

The defendants have filed assignments of error raising principally questions of law. In the brief filed with the assignments of error the defendants say in part:

"The statement of the case is set out in the final decree of the Court as found in the record at pages 92-94 and even though appellant Central Coal Company which was the defendant in the Court below does not admit that all details in the statement are true, admits that it is very nearly correct."

We have carefully read the entire record and examined the exhibits filed and fully concur with the Chancellor in the facts found, which are in part as follows:

"1. On August 13, 1946, G. E. Harrison leased to one Morris S. Kemmerer, by instrument recorded in Chattel Mortgage and Lease Book 16, at Page 229, Register's Office of Putnam County, approximately six thousand one hundred ninety-eight (6,198) acres of land in Putnam and Cumberland Counties, Ten-

nessee, more particularly described hereinafter in this decree, for the mining of coal therefrom at a royalty of ten cents (10¢) per ton, with minimun royalty of Two Hundred Fifty and No/100 ($250.00) Dollars per month.

"2. On December 16, 1947, the said Kemmerer transferred all of his rights, title, and interests therein to one E. J. Davis, by an instrument of record in Chattel Mortgage and Lease Book 18, page 400, Register's Office of Putnam County. The said E. J. Davis was in the original bill named as a party defendant in this cause, but service of process was not had upon him; he was present at the hearing. By said agreement Davis was to pay Kemmerer a consideration of Two Hundred Thousand and No/100 ($200,-000.00) Dollars, partly in cash, and the remainder by installments of Twenty Thousand and No/100 ($20,-000.00) Dollars each, beginning June 16, 1948, and ending June 16, 1951, and to pay Kemmerer ten cents (10¢) per ton royalty to be paid to Harrison under terms of the original lease and an additional twenty cents (20¢) per ton royalty, until payment of the full consideration of the Two Hundred Thousand and No/100 ($200,000.00) Dollars with the twenty cents (20¢) per ton additional royalty to be credited against the balance remaining due on the Two Hundred Thousand and No/100 ($200,000.00) Dollars.

"3. By subsequent agreements between Harrison and Kemmerer, acknowledged on August 26 and 27, 1948, and recorded in Lease Book 1, Page 365, Register's Office of Putnam County, and from Kemmerer to Davis dated August 30, 1948, recorded in Lease Book 1, Page 367, Register's Office of Putnam County, five additional tracts, more particularly de-

scribed hereinafter in this decree, were added to the lands leased, subject to the terms and conditions of the two original instruments of August 13, 1946, and December 16, 1947, respectively hereinabove mentioned. The terms of each of the instruments between Kemmerer and Davis included the provision that, in the event of default by Davis in making payments of royalties or of installments of the purchase money or interest, for a period of thirty (30) days after due date Kemmerer, upon thirty (30) days' notice in writing, might take over and repossess the property and any and all mining operations, installations, tools, and equipment, and in that event Davis was to turn over all of said property and peaceably quit the premises.

"4. By an instrument dated August 8, 1949, recorded in Lease Book 1, Page 487, Register's Office of Putnam County, Davis with his wife joining in, conveyed and assigned to the defendant, Central Coal Company, all of the above described interest which Davis held.

"5. On August 19, 1949, the said Kemmerer and the defendant, Central Coal Company, by instrument recorded in Lease Book 1, Page 489, Register's Office of Putnam County, made certain modifications in the earlier instruments between Kemmerer and Davis including a deferment of two years in the payments to be made to Kemmerer, and providing that Kemmerer would not attempt to forfeit or cancel the rights of Central without giving to the Defendant, Reconstruction Finance Corporation, thirty days within which to cure any default by the defendant Central. By said instrument the parties also agreed to the subordination of the first lien of Kemmerer

with respect to any machinery and other personal property on or added to the lands here involved, but not with respect to the rights in the leasehold, to any lien subsequently acquired by the defendant, Reconstruction Finance Corporation; that defendant did subsequently acquire such prior lien to the machinery and other personal property.

"6. On October 21, 1950, Kemmerer assigned all of his rights, titles and interests, including the forfeiture rights, to and in the aforesaid instruments of December 16, 1947, and August 19, 1949, to G. E. Harrison.

"7. On February 29, 1952, the defendants, Central Coal Company and the Reconstruction Finance Corporation and J. A. Allred, Agent, entered into an agreement of record in Lease Book 2, Page 279, Register's Office of Putnam County, by which Central assigned all of its rights and interests in a five hundred acre tract, described more particularly hereinafter, which was included within the original acreage leased. Allred agreed to and did pay to Central Coal Company Fifty Thousand and No/100 ($50,000.00) Dollars and agreed to pay the ten cents (10¢) per ton royalty due to Harrison with respect to coal mined from the five hundred acre tract, but not the minimum royalty of Two Hundred Fifty and No/100 ($250.00) Dollars per month, and not the interim twenty cents (20¢) per ton royalty which Central was obligated to pay to Kemmerer. The defendant, Central Coal Company, agreed, among other things, to comply with all of it obligations under the aforementioned Kemmerer-Davis agreement of December 16, 1947, to pay all royalties and taxes due to Harrison, and to save Allred harmless from any violation

thereof. Subsequently an additional ten (10) acres, more particularly described hereinafter, was added to the five hundred acre tract in which Allred acquired rights.

"8. Allred in making the aforementioned agreement of February 29, 1952, and subsequent agreements, some of which are not here material, was acting as agent for himself, W. B. Brown, and the complainant, J. H. Amos, who subsequently was assigned all interests of the said Brown and Allred, and is the proper and only necessary party complainant in this cause.

"9. The defendant, Central failed to make the following payments when and as due from it to the defendant, G. E. Harrison, as assignee of Kemmerer under the aforementioned agreement between Harrison and Kemmerer dated October 21, 1950, and these payments after becoming delinquent were made by complainant in the amounts and on the dates shown, to either Harrison or his personal representative.

| Paid | Amount |
|------|--------|
| December 30, 1952 | $20,585.75 |
| January 29, 1953 | 975.40 |
| August 21, 1953 | 2,588.00 |
| August 21, 1953 | 20,333.00 |
| December 18, 1953 | 13,359.03 |
| TOTAL | $57,841.18 |

"Central failed to make the following payments when and as due from it to the said G. E. Harrison, Sr., (or his personal representative or heirs) as original lessor of the lands here involved, and these payments after becoming delinquent were made by complainant on the dates and in the amounts shown:

| Paid | Amount |
|---|---|
| March 28, 1953 | $ 631.03 |
| May 14, 1953 | 250.00 |
| June 9, 1953 | 250.00 |
| August 13, 1953 | 250.00 |
| August 21, 1953 | 250.00 |
| December 18, 1953 | 1,000.00 |
| TOTAL | $2,631.03 |

Said amounts total Sixty Thousand Four Hundred Seventy-Two and 21/100 ($60,472.21) Dollars.

"10. In failing to make each of these aforesaid payments as they became due the defendant, Central Coal Company, breached the contract of February 29, 1952; complainant Amos had the express right under the said contract to make each of these payments; and aside from any of the provisions of the contract, complainant Amos in making the payments was not a volunteer, but was acting to protect his own interest in that part of the lands as to which he had acquired an interest from Central Coal Company, and was compelled to make the payments in order to prevent Central Coal Company's delinquencies from causing the forfeiture of all interests in the lands, including his own interest acquired through Central Coal Company, and complainant Amos had the right to make the said payments.

"11. Repeated demands were made upon Central Coal Company for reimbursement of the amount paid, but the defendant Central Coal Company has not reimbursed Amos for any of them, and is insolvent, and no evidence was offered of any efforts or plans of Central Coal Company to reimburse complainant, or to take care of its continuing and future obligations with respect to these lands. The defend-

ant, Central Coal Company, has removed from the premises and disposed of personal property, machinery and equipment notwithstanding the liens imposed upon said equipment in the foresaid instruments; the defendant, Central Coal Company has shown no good defense to the complainant's bill; and the equities are with the complainant.

"12. The only evidence is that there is not any equity in the acreage retained by Central Coal Company in excess of the total amount paid by complainant for the account of Central Coal Company as set out above.

"13. Complainant is entitled to full subrogation to all of the rights of G. E. Harrison, as assignee of Kemmerer by the agreement of October 21, 1950, between G. E. Harrison and Kemmerer, including the right reserved to Kemmerer in the instruments of December 16, 1947, and August 30, 1948, to terminate all of the rights, title and interests of E. J. Davis and any assignee (and thereby those of Central Coal Company) to and in the lands here involved, and to take over and repossess them.

"14. G. E. Harrison, and his successor and personal representative have received all amounts due them under the aforementioned agreement between Kemmerer and Harrison of October 21, 1950, and the rights of the successors in interest of the said Harrison can in no way be harmed by granting to complainant the full subrogation and forfeiture as prayed; the personal representative of G. E. Harrison and now defendant, George E. Harrison, Jr., did not appear at the hearing and has not attempted to resist the subrogation and forfeiture sought by complainant.

"15. The defendant, Reconstruction Finance Corporation, has failed to make any answer or other appearance and has advised complainant as evidenced by its letter which was made a part of the proof in this cause, that has no objection to a judgment pro confesso being taken against it, provided its prior lien against the machinery, mining equipment and other personal property on the premises is preserved, and provided that it is not taxed with the costs. Complainant has throughout recognized the prior lien of the Reconstruction Finance Corporation against the said machinery, mining equipment, and other personal property, and is itself willing to be taxed with any costs which might otherwise be taxed against the Reconstruction Finance Corporation. The defendant, Central Coal Company is the only defendant resisting the relief sought by complainant."

The decree of the Chancellor then provides as follows:

"The complainant, John H. Amos, is hereby granted full and complete subrogation to all the rights, title and interests of Morris S. Kemmerer, subsequently transferred and assigned by Kemmerer to G. E. Harrison by the agreement of October 21, 1951, in the Kemmerer-Davis agreements of December 16, 1947, and August 30, 1948, and in the Kemmerer-Central Coal Company agreement of August 19, 1949, and with respect to and in the tracts of land described hereinafter, and all machinery, mining equipment and other personal property located on said tracts.

"Said tracts of land are located in the 14th Civil District of Putnam County, Tennessee, and the 2nd

Civil District of Cumberland County, Tennessee, and are bounded and described as follows.''

(Here follows descriptions)

The decree then provides:

''The Kemmerer-Davis agreements of December 16, 1947, and August 30, 1948, and the Kemmerer-Central Coal Company agreement of August 19, 1949, and rights, title and interests acquired in, by, or through said instruments by Central Coal Company, its successors in interest and assigns, shall be and are hereby terminated and forfeited; and the complainant, John H. Amos, is granted and awarded all of the rights, titles, and interests to and in the aforedescribed lands, machinery, and mining equipment and other personal property located thereon, which were originally acquired by Morris S. Kemmerer from G. E. Harrison by the Harrison-Kemmerer agreements of August 13, 1946, and August 26, 1948, subject to all of the terms, provisions, and conditions of the two said agreements, but free and clear of all rights, title or interests of defendant, Central Coal Company, its successors and assigns, and of the Reconstruction Finance Corporation; reserving, however, to the Reconstruction Finance Corporation the prior lien against the machinery, mining equipment and other personal property, which shall continue to be prior to the rights granted herein to the complainant in said machinery, mining equipment, and other personal property, and the complainant is awarded the possession of the aforedescribed lands, for the purposes and subject to the provisions of the two aforesaid Harrison-Kemmerer instruments, and a writ of possession will issue if and when applied for.

"Complainant shall pay the costs of the cause, which shall include as compensation to the Clerk and Master for the handling and disbursing of the funds disbursed pursuant to prior decrees in the cause a fee of one per cent, totalling Three Hundred Seventy-Five and 30.100 ($375.30) Dollars. Provided, however, that the defendant, Central Coal Company, may redeem its interests in the aforedescribed lands hereinabove terminated and forfeited, excepting from such redemption any interest in the tracts totalling five hundred ten (510) acres hereinafter described, by paying into Court within sixty (60) days after the entry of this decree the total sum of Sixty Thousand Four Hundred Seventy-Two and 21.100 ($60,472.21) Dollars, this being the total of the amounts as set out hereinabove paid by complainant for and on behalf of Central Coal Company prior to the date of the hearing, together with interest as two and one-half (2½) per cent on each of the respective payments from the date of payment thereof as set out in Paragraph nine (9) hereinabove to the date on which such payment is made into Court by the defendant, Central Coal Company, and in that event complainant shall have judgment for said amount, and the Clerk and Master shall pay it to complainant; and in that event the complainant (as subrogee to the rights of G. E. Harrison and his successors, acquired by the said Harrison by the Kemmerer-Harrison agreement of October 21, 1951) shall continue to have and to hold all of the original rights, title and interests acquired by Morris S. Kemmerer from G. E. Harrison by the agreements of August 13, 1946, and August 26, 1948, subject to all of the terms, conditions and provisions of these two said agreements, but free and

clear of any right, title, or interest whatsoever of the Central Coal Company, its successors and assigns, in and with respect to the said tracts totalling five hundred ten (510) acres, in and with respect to which the complainant originally acquired interests from and through the defendant, Central Coal Company, and more particularly described as follows:"

Then follows the description of 510 acres of land and the decree provides:

"And in that event the costs, to include an additional compensation of One Hundred and No/100 ($100.00) Dollars to the Clerk and Master with respect to the amounts paid into Court by the defendant, Central Coal Company, in addition to the compensation set out in Paragraph III. Hereinabove, shall all be taxed to the defendant, Central Coal Company, and said judgment and the costs shall all be secured by lien against the rights, title and interests of the defendant, Central Coal Company, to and in that part of the hereinabove described acreage as to which Central Coal Company shall have then redeemed its interests."

From this decree the defendant Central Coal Company has perfected its appeal to this Court.

It is insisted for the defendant that the Chancellor erred in not sustaining its demurrer to the original and amended bills in granting an injunction and in holding that complainant was entitled to be subrogated to the rights of the co-defendant Harrison.

An examination of the entire record discloses that the Chancellor was not in error in holding that the equities of the case were with the complainant and that therefore complainant was entitled to be subrogated to the rights of the defendants Kemmerer and Harrison

when for his own protection, he paid out many thousands of dollars.

Subrogation is a right which is founded upon equity and justice and accrues when one person for the protection of his own interests, pays a debt for which another is primarily liable.

In the case of Harrison v. Harrison, 149 Tenn. 601, 259 S. W. 906, 907, 32 A. L. R. 563, the Supreme Court said:

"As stated by Mr. Justice Lansden in Walker v. Walker, supra [138 Tenn. 679, 200 S. W. 825]:

" 'The doctrine of subrogation is steadily expanding in its practical administration so as to embrace all cases where complete justice cannot be done without it.'

"In Cottrell's Appeal, 23 Pa. 294, the court said:

" 'Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract of privity of any kind exists between the parties. Wherever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor.'

"These are general statements of the settled rule. In a note in 23 L. R. A. 124, citing many cases, the following statement is to be found:

" 'Generally where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in the place of a creditor, such person will be so substituted.'

"It is insisted that Mrs. Harrison was a volunteer. The equitable remedy of subrogation is by no means confined to those personally bound on the obligation.

Mr. Pomeroy divides those entitled to this relief into three classes:

" 'First, those who act in performance of a legal duty, arising either by express agreement or operation of law; second, those who act under the necessity of self-protection, third, those who act at the request of the debtor, directly or indirectly, or upon invitation of the public, and whose payments are favored by public policy.' Pomeroy's Eq. Rem. (2d Ed.) p. 921.

"The most conspicuous example of the first class is the surety, and it is to this class, for reasons quite obvious, that the rule requiring discharge of the whole debt more particularly applies, for otherwise the position and rights of the creditor would be impaired, and this equity would not permit. While this first class is, generally speaking, confined to those legally obligated, it is suggested by this learned authority that subrogation is permitted, even though the party making the payments were not really bound, if 'it be made in performance of a supposed legal duty, and in good faith.' But it is within the second class as given by Mr. Pomeroy, supra, that the case of Mrs. Harrison would seem more properly to fall. He says (Equitable Remedies, par. 921b):

" 'The second class of parties entitled to subrogation consists of those who, while not legally bound to pay, yet might suffer loss if the obligation is not discharged, and so pay the debt in self-protection. In this class are included subsequent incumbrancers paying off a prior incumbrance, and owners of property, or of equities or partial interests therein, paying off prior incumbrances. It would seem here, as in the first class of cases, that one acting in good

faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect.' ''

In the case of Dixon v. Morgan, 154 Tenn. 389, 285 S. W. 558, 560, it is said:

"Under the title of subrogation, the following statement appears in 25 Ruling Case Law, p. 1313:

'' 'It is a doctrine therefore which will be applied or not according to the dictates of equity and good conscience, and consideration of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate securities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes; and the expansion of the rule has so nearly covered the field that it may now be said that, wherever a court of equity will relieve against a transaction, it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded.'

\* \* \* \* \* \*

"This court is committed to the doctrine of equitable assignment, and will apply the rule unless rights of third parties have intervened, or the complainant is guilty of that degree of negligence which repels him from a court of equity.

"In determining this question, the court will look to the surrounding facts and circumstances of each ease as it arises." See also Gamble v. Fulton, 166 Tenn. 66, 59 S. W. (2d) 504, and other cases.

It is insisted that the Court erred in not ordering a sale of the property by the Clerk and Master. The Chancellor had found as a fact that there was no equity in the property over the amount that complainant had invested in it and he did not abuse his discretion in not requiring the complainant to go to the additional fees and expense of a Court sale. There is no equity in this insistence as a sale by the Clerk and Master could not in any way benefit the defendant.

It is insisted that the Chancellor erred in granting a preliminary injunction in the case prohibiting the defendants from doing anything that might affect the interest of the parties in the land in controversy until the hearing of the case. It does not appear that any application was made to the Chancellor for a dissolution of this injunction or that defendant's rights or interests had in any way been prejudiced by it or that any damages resulted to defendant therefrom. The Chancellor did not abuse his discretion in granting this injunction.

All the assignments of error are overruled and the decree of the Chancery Court of Putnam County is affirmed with costs.

The case will be remanded to the Chancery Court of Putnam County for the execution of the decree.

Felts, P. J., and Hickerson, J., concur.

Affirmed and remanded.