**In re Norma MORGAN, Debtor.**

**Dean B. Farmer, Trustee, Plaintiff,**

v.

**LaSalle Bank, Defendant.**

**Bankruptcy No. 01–31549.**
**Adversary No. 02–3066.**

United States Bankruptcy Court,
E.D. Tennessee.

March 18, 2003.

Hodges, Doughty & Carson, PLLC, Keith L. Edmiston, Esq., Knoxville, TN, for Dean B. Farmer, Trustee.

Stone & Hinds, P.C., George F. Legg, Esq., Knoxville, TN, for LaSalle Bank.

## MEMORANDUM

RICHARD S. STAIR, Jr., Bankruptcy Judge.

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff, Dean B. Farmer, Chapter 7 Trustee (Trustee), seeking a determination that insurance proceeds paid the Defendant, LaSalle Bank (LaSalle), after the Debtor's bankruptcy petition was filed constituted a postpetition transfer under 11 U.S.C.A. § 549 (West 1993), recoverable pursuant to 11 U.S.C.A. § 550 (West 1993 & Supp.2002). Alternatively, the Trustee asserts that the insurance proceeds are property of the Debtor's bankruptcy estate under 11 U.S.C.A. § 541 (West 1993), and the Trustee, in his position as hypothetical lien creditor under 11 U.S.C.A. § 544 (West 1993 & Supp.2002), is entitled to a turnover thereof pursuant to 11 U.S.C.A. § 542 (West 1993 & Supp.2002). LaSalle filed its Answer on August 14, 2002, raising the affirmative defense of equitable subrogation.

Presently before the court are cross motions for summary judgment filed by the Trustee on January 27, 2003 (the Trustee's Motion), and by LaSalle on February 19, 2003 (LaSalle's Motion).[1] The court heard oral argument on the two motions on March 6, 2003. The record before the court consists of facts and documents stipulated by the parties pursuant to the Stip-

---

1. The documents filed by LaSalle were, in actuality, Defendant LaSalle Bank Response to Motion for Summary Judgment [sic] and Defendant LaSalle Bank Memorandum of Law in Response to and Support of Motion for Summary Judgment [sic]. In its Memorandum of Law, LaSalle states that there are no material facts in dispute and requests that the court grant it a summary judgment. The court will treat LaSalle's Response as a motion for summary judgment. The court additionally notes, however, that LaSalle's Response and Memorandum were not filed within twenty days after the Trustee's Motion for Summary Judgment was filed as required by E.D. Tenn. LBR 7007–1. The court will nonetheless consider these documents.

ulations of the Parties filed on November 27, 2002.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (E), (K), and (O) (West 1993).

## I

The facts are not in dispute. On January 18, 1999, the Debtor purchased a pre-owned 1998 Chevrolet Malibu (the Automobile) from Beaty Chevrolet. Pursuant thereto, she executed a Sales Contract with Beaty Chevrolet. The Automobile purchase was financed by a loan through First American National Bank (First American) which was secured by the Automobile. First American's lien on the Automobile was noted on the Tennessee Certificate of Title issued on February 1, 1999. On February 12, 1999, the Debtor refinanced the loan with LaSalle and as collateral, LaSalle was granted a security interest in the Automobile pursuant to a Promissory Note and Security Agreement executed by the Debtor. Loan proceeds received from LaSalle were used to fully satisfy the Debtor's obligation to First American. The Debtor commenced her bankruptcy case by the filing of a Voluntary Petition under Chapter 7 on March 27, 2001.

On April 30, 2001, AmSouth Bank, successor in interest to First American, wrote a letter to LaSalle, confirming that it had no interest in the Debtor's Automobile. On May 10, 2001, LaSalle applied to the Tennessee Department of Safety for a duplicate Tennessee Certificate of Title. Likewise, on May 10, 2001, LaSalle executed an Application for Notation of Lien on Certificate of Title evidencing itself as the lienholder, which was received by the Tennessee Department of Title and Registration on May 14, 2001. The State of Tennessee issued a Duplicate Certificate of Title on May 17, 2001. The Certificate of Title evidencing LaSalle as lienholder was issued on May 21, 2001. Until that date, First American was the lienholder noted on the Certificate of Title.

Also in April 2001, the Debtor was involved in an automobile accident resulting in a total loss to the Automobile. The Debtor subsequently conveyed title of the Automobile to State Farm Insurance Company (State Farm), her insurance carrier. In November 2001, State Farm paid LaSalle $7,479.03 in full satisfaction of the Debtor's indebtedness to LaSalle.

On May 11, 2002, and July 12, 2002, the Trustee made written demands to LaSalle for evidence of its perfected security interest in the Automobile and, thus, in the proceeds received from State Farm. LaSalle did not respond to either request, and the Trustee filed the Complaint commencing this adversary proceeding on May 7, 2002.

The Trustee asserts that LaSalle's lien on the Automobile was not perfected as of the date that the Debtor's bankruptcy was filed and, thus, (1) LaSalle's postpetition notation of lien on the Tennessee Certificate of Title for the Automobile was a violation of the automatic stay provisions of 11 U.S.C.A. § 362(a)(4) (West 2003) and should be voided; (2) the Trustee, in his position as a hypothetical lien creditor under § 544, has priority over LaSalle's unperfected security interest; (3) LaSalle's unperfected security interest should be avoided under § 544 and recovered by the Trustee pursuant to § 550; (4) the $7,479.03 payment from State Farm to LaSalle, as a result of the Debtor's automobile accident, was a postpetition transfer under § 549, recoverable by the Trustee pursuant to § 550; and/or (5) the proceeds paid to LaSalle as a result of the Debtor's automobile accident were property of the Debtor's bankruptcy estate, subject to turnover to the Trustee pursuant to § 542.

LaSalle argues that, under the doctrine of equitable subrogation, its lien was perfected prepetition and, accordingly, it did not violate the automatic stay when it obtained a Duplicate Tennessee Certificate of Title evidencing itself as lienholder on the Automobile. Similarly, LaSalle maintains that the insurance proceeds received from State Farm were not property of the Debtor's bankruptcy estate, and it should not be required to turnover the proceeds to the Trustee.

Accordingly, if LaSalle's security interest in the Automobile was properly perfected at the time that the Debtor filed her bankruptcy petition by virtue of subrogation of First American's lien rights, the insurance proceeds were not property of the Debtor's bankruptcy estate, and LaSalle did not violate the automatic stay when it had its lien noted on the Automobile's certificate of title. However, if LaSalle's security interest was not properly perfected, the Trustee has a superior interest in the Automobile, the insurance proceeds received by LaSalle were property of the Debtor's bankruptcy estate, and LaSalle must turnover the proceeds to the Trustee for distribution to the Debtor's creditors.

## II

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure made applicable to adversary proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56 dictates that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the initial burden of proving that there are no genuine issues of material fact, entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir.2001). The burden then shifts to the nonmoving party to produce specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing FED. R. CIV. P. 56(e)). The nonmoving party must cite specific evidence and may not merely rely upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir.2000). The facts and all resulting inferences will be viewed in the light most favorable to the nonmoving party. *See Matsushita*, 106 S.Ct. at 1356. This court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

In this case, the parties have stipulated that there are no genuine issues of material fact and have, in fact, stipulated to the material facts. Therefore, the question before the court is, based upon the facts and the stipulated exhibits, which party is entitled to judgment as a matter of law.

## III

The first question before the court is whether LaSalle's security interest in the Automobile was properly perfected. Issues such as the method for achieving perfection of a security interest and the time at which a security interest is perfected are matters of state law. *Hendon v. Gen. Motors Acceptance Corp. (In re B & B Utils., Inc.)*, 208 B.R. 417, 421 (Bankr. E.D.Tenn.1997). In Tennessee, the per-

fection of a security interest in a motor vehicle is governed by title 55, chapter 3 of the Tennessee Code Annotated (collectively the Tennessee Certificate of Title Statute). Specifically, section 55–3–126, as it existed in 2001, provides, in pertinent part:

> (a) A lien or security interest in a vehicle of the type for which a certificate is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent transferees, and the holders of security interest and liens on the vehicle by compliance with this chapter.
>
> (b)(1) A security interest or lien is perfected by delivery to the division of motor vehicles or the county clerk of the existing certificate of title, if any, title extension form, or manufacturer's statement of origin and an application for a certificate of title containing the name and address of the holder of a security interest or lien with vehicle description and the required fee.
>
> (2) The security interest is perfected as of the time of its creation if the delivery is completed within twenty (20) days thereafter. Otherwise, a security interest is perfected as of the date of delivery to the county clerk or the division of motor vehicles.[2]
>
> . . . .
>
> (c) When the security interest is perfected as provided for in this section, it shall constitute notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, to subsequent purchasers and encumbrances, . . . .
>
> (d) The method provided in this section and § 55–3–125 of obtaining a lien or encumbrance upon a motor vehicle, . . . subject to the provisions of chapters 1–6

of this title relative to the issuance of certificates of title, shall be exclusive except as to liens depending upon possession and the lien of the state for taxes[.]

TENN. CODE ANN. § 55–3–126 (1998). As stated by the Tennessee Supreme Court, "a security interest in a motor vehicle is not perfected until a notation of the lien is made on the certificate of title." *Still v. First Tenn. Bank, N.A.*, 900 S.W.2d 282, 285 (Tenn.1995).

LaSalle argues that equitable subrogation of First American's perfected security interest in the Automobile is appropriate because funds loaned to the Debtor by LaSalle were used to pay First American's lien in full, LaSalle was then given a security interest in the Automobile in place of First American, and there was a continuous notation on the certificate of title between First American and LaSalle.

■■■ Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Castleman Constr. Co. v. Pennington*, 222 Tenn. 82, 432 S.W.2d 669, 674 (1968) (quoting 83 C.J.S. SUBROGATION § § 1, 2). The right to subrogation "accrues when one person for the protection of his own interests, pays a debt for which another is primarily liable." *Amos v. Cent. Coal Co.*, 38 Tenn.App. 626, 277 S.W.2d 457, 462 (1954). "A right of subrogation may arise by contract ('conventional subrogation'), by application of equitable principles of law ('legal subrogation'), or by application of statute ('statutory subrogation')." *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn.1999). Legal or equitable subroga-

---

**2.** The statute has since been revised and the twenty-day language has been deleted. *See* TENN. CODE ANN. § 55–1–126(b)(2) (Supp.

2002) ("The security interest is perfected as of the date of delivery to the county clerk or division of motor vehicles.").

tion "is founded on principles of justice and equity, and its operation is governed by principles of equity." *Castleman Constr. Co.*, 432 S.W.2d at 674; *see also Wimberly v. Am. Cas. Co.*, 584 S.W.2d 200, 203 (Tenn.1979).

■ In deciding whether to employ subrogation as a remedy, the court should balance the equities involved. *Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F.Supp.2d 785, 792 (W.D.Tenn.1998). The negligence of a party seeking subrogation is a factor to be considered, along with any harm to be suffered by third parties if subrogation is allowed. *Dixon v. Morgan*, 154 Tenn. 389, 285 S.W. 558, 561–62 (1926). If "no one is injured by the mistake other than the party himself, ... relief may be granted, even though a high degree of care has not been exercised." *Id.* at 562.

LaSalle asserts that the Uniform Commercial Code, as adopted in Tennessee, expressly authorizes the court to incorporate equitable principles, which would include equitable subrogation, citing Tennessee Code Annotated section 47–1–103, which provides that

[u]nless displaced by the particular provisions of chapters 1–9 of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

TENN. CODE ANN. § 47–1–103 (2002). Stating that security interests in motor vehicles are within the scope of Article 9 of the Uniform Commercial Code, LaSalle argues that equity principles are contemplated

concerning the perfection of security interests in motor vehicles, despite the Tennessee Certificate of Title Statute.

■ "Motor vehicles are goods for the purpose of Article Nine, and therefore, the Uniform Commercial Code applies to transactions intended to create a security interest in automobiles." *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 442 (Tenn.Ct.App.1994). Article 9 of the Uniform Commercial Code, as adopted in Tennessee, discusses the perfection of security interests in motor vehicles, as follows:

(a) Except as otherwise provided ..., the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:

. . . .

(2)(A) a certificate-of-title statute of this state, covering automobiles, trailers, mobile homes, vehicles or the like, which provides for a security interest to be indicated on the certificate as a condition or result of perfection, under Tennessee Code Annotated, Title 55, Chapter 3[.]

TENN. CODE ANN. § 47–9–311 (2001).

■ Clearly, Tennessee's Uniform Commercial Code defers its application to the Tennessee Certificate of Title Statute regarding the exclusive method for perfection of a security interest in a motor vehicle. There is nothing in the Tennessee Certificate of Title Statute that allows a court to supplement the Statute with equitable principles. On the other hand,

Article Nine is not, however, the only body of law governing security interests in automobiles. In accordance with [Tennessee Code Annotated section] 47–9–302(3)(b) (1992),[3] Article Nine's filing

---

**3.** Section 47–9–302, entitled "When filing is required to perfect security interest—Security interests to which filing provisions of this chapter do not apply," provided as follows:

(3) The filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to:

. . . .

requirements must give way to any statutory scheme that provides for the central filing of security interests or the notation of these interests on a certificate of title. Tennessee's motor vehicle title and registration laws are just such statutes. Thus, compliance with these statutes is the exclusive method for perfecting a security interest in automobiles not part of inventory.

*Keep Fresh Filters*, 888 S.W.2d at 442 (citations omitted).

 LaSalle cites to and urges the court to adopt the reasoning of the Tennessee Court of Appeals' decision in *Assocs. Home Equity Servs., Inc. v. Franklin Nat'l Bank*, No. M2000–00516–COA–R3–CV, 2002 WL 459007, 2002 Tenn.App. LEXIS 207 (Tenn.Ct.App. Mar.26, 2002), in which the court of appeals allowed an equitable remedy in light of Tennessee's recording statutes.[4] In that case, the court applied the doctrine of equitable subrogation in relation to two home mortgages recorded on the same real property, despite the provisions of the recording statute.

There is a considerable difference, however, between the two situations. As the court of appeals noted, "[c]ourts recognize ... exceptions to the first-filed rule [of Tennessee's race-notice recording statute] which are based upon facts not disclosed by a search of recorded instruments." *Assocs. Home Equity Servs.*, 2002 WL 459007, at *2, 2002 Tenn.App. LEXIS 207, at *8. Conversely, cases dealing with perfection of a motor vehicle have consistently held that notation on the certificate of title is the sole method of perfection, and in fact, even in cases where notation did not occur by mistake of a governmental employee, courts have held that the security interests were not perfected. *See, e.g., Schulman v. Ford Motor Credit Co. (In re Leach)*, 206 B.R. 903, 905, 907 (Bankr. M.D.Tenn.1997) (mistake by creditor in name noted on certificate of title was "fatal" as to section 55–3–137(b)(1) requirements); *Newton v. First Am. Nat'l Bank (In re Webb)*, 106 B.R. 517, 521–22 (Bankr. E.D.Tenn.1989) (even though dealership made clerical error on application for notation of lien, the creditor was still unperfected under Tennessee law); *Waldschmidt v. Smith (In re York)*, 43 B.R. 36, 37 (Bankr.M.D.Tenn.1984) (because perfection requires both application and notation, creditor's lien was inferior to that of the bankruptcy trustee, despite the fact that the Tennessee Department of Motor Vehicles lost the creditor's application for notation).

(b) statutes of this state which provide for central filing of, or which require indication on a certificate of title of such security interests in such property[.]

TENN. CODE ANN. § 47–9–302(3)(b) (1992). This section is similar to section 47–9–311(a)(2)(A), *supra;* however, the current statute is even more definite, in that it specifically identifies Tennessee Code Annotated Title 55, Chapter 3 as the governing law.

4. Tennessee's recording statute, section 66–26–101, entitled "Effect of instruments with or without registration," provides as follows:

All of the instruments mentioned in § 66–24–101 [including warranty deeds and deeds of trust] shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided.

TENN. CODE ANN. § 66–26–101 (1993).

Section 66–26–103, entitled "Unregistered instruments void as to creditors and bona fide purchasers," provides as follows:

Any of such instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

TENN. CODE ANN. § 66–26–103 (1993).

LaSalle also argues that because First American never released its perfected lien on the Automobile, perfection was continuous between the two entities, such that First American's perfection should be subrogated to LaSalle. Indeed, the parties have stipulated that First American's perfected security interest was noted on the Automobile's certificate of title until the duplicate title noting LaSalle's interest was issued by the State of Tennessee on May 17, 2001.

As to this argument, the court takes notice that the Certificate of Title issued on May 21, 2001, evidencing LaSalle as lienholder on the Automobile states that the "Date of First Security Interest" was May 14, 2001, approximately seven weeks after the Debtor filed her bankruptcy petition. This was the date in which the Application for Notation of Lien was received by the State of Tennessee and, pursuant to section 55–3–126(b)(2), is the date that LaSalle perfected its security interest in the Automobile in the eyes of the State of Tennessee. Likewise, that is the date of perfection in the eyes of the court.

■■■ Finally, LaSalle argues that it should not be penalized because First American failed to deliver the certificate of title to LaSalle after the refinancing took place. LaSalle correctly states that, pursuant to Tennessee Code Annotated section 55–3–114(c), First American had a duty to release the certificate of title to LaSalle, upon request by LaSalle. *See*

TENN. CODE ANN. § 55–3–114(c) (1998). However, even though First American had a duty to deliver the certificate of title to LaSalle, it was ultimately LaSalle's responsibility to get the title from First American or to obtain a duplicate title, as it eventually did, more than two years after the fact. The only party that penalized LaSalle was LaSalle, and "the risk of loss ... should be borne by the secured party who is ultimately responsible for seeing that the lien is properly noted." *York*, 43 B.R. at 38.[5] In the court's opinion, that party is LaSalle.[6]

Under the laws of the State of Tennessee, the date upon which LaSalle perfected its security interest in the Automobile was May 14, 2001.

**IV**

Having determined that LaSalle's security interest in the automobile was not perfected until after the commencement of the Debtor's bankruptcy case, the second question before the court is whether LaSalle's actions in having the lien noted on the Automobile's certificate of title postpetition was a violation of the automatic stay.

■■■ The commencement of a debtor's bankruptcy case triggers the protection of the automatic stay provisions set forth in § 362(a), which states in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, ... operates as a stay, applicable to all entitles, of—

---

5. The *York* court noted that "[i]n this case neither the debtor nor the lienor (the debtor's brother-in-law) demonstrated any particular diligence about the notation of the lien. The debtor waited more than seven months after signing the note to make the application for notation of lien. The lienholder-to-be, defendant Smith, apparently waited several years to check whether his lien was noted and even then not until after the issue was joined in this bankruptcy." *York*, 43 B.R. at 38 n. 3.

6. The court notes that even if it could entertain equitable subrogation as a remedy, in this situation, LaSalle's carelessness in obtaining notation of its lien on the certificate of title, coupled with the harm that subrogation would cause to the unsecured creditors in this case, combine to weigh in the Trustee's favor in the equity arena.

. . . .

(4) any act to create, perfect, or enforce any lien against property of the estate[.]

11 U.S.C.A. § 362 (West 1993 & Supp. 2002). "A specific intent to violate the stay is not required, or even an awareness by the creditor that [its] conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay." *In re Printup,* 264 B.R. 169, 173 (Bankr.E.D.Tenn.2001).

 LaSalle did not seek to perfect its security interest in the Automobile until after the filing of the Debtor's bankruptcy case. Regardless of its intent, this action constituted a violation of the automatic stay, and it shall be voided.[7] *See also Webb,* 106 B.R. at 520 n. 4 (the creditor's postpetition attempt to cure clerical error on certificate of title and perfect lien violated the automatic stay provisions of § 362(a)).

## V

 The next question before the court is whether the Trustee, in his position as hypothetical lien creditor under § 544, has priority over LaSalle's unperfected security interest, such that LaSalle's security interest should be avoided, and LaSalle should be required to turnover the funds received from State Farm.

Section 544, entitled "Trustee as lien creditor and as successor to certain creditors and purchasers," provides in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

11 U.S.C.A. § 544 (West 1993). Section 544(a) is known as the "strong-arm provision" and allows the Trustee to avoid certain transfers made by a debtor or on a debtor's behalf. *See* 5 COLLIER ON BANKRUPTCY ¶ 544.02 (Lawrence P. King ed., 15th ed. rev.2002). This allows the Trustee to hold the property for the benefit of the estate and reduces the former holder of a security interest to the status of an unsecured creditor. *Walker v. Elam (In re Fowler),* 201 B.R. 771, 779 (Bankr. E.D.Tenn.1996); *Waldschmidt v. Dennis (In re Muller),* 185 B.R. 552, 555 (Bankr. M.D.Tenn.1995). The Trustee obtains the rights possessed by the former secured creditor. *Fowler,* 201 B.R. at 781.

Even though federal law vests the Chapter 7 Trustee with the rights and powers of a judicial lien creditor, applicable state law determines what rights and powers exist. *Muller,* 185 B.R. at 554. In this case, Tennessee state law determines what

7. As stated by the Sixth Circuit,

[A]ctions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances. We suggest that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor. *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 911 (6th Cir.1993).

rights the Trustee acquired pursuant to § 544(a)(1).

At the time that the Debtor filed her bankruptcy petition, the priority of security interests was governed by Tennessee Code Annotated 47–9–301, which provided in material part:

47–9–301. Persons who take priority over unperfected security interests— Right of "lien creditor."

(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of:

. . . .

(b) a person who becomes a lien creditor before the security interest is perfected[.]

. . . .

(3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes . . . a trustee in bankruptcy from the date of the filing of the petition[.]

TENN. CODE ANN. § 47–9–301 (1999).[8]

Under Tennessee law, the Trustee's status as lien creditor takes priority over LaSalle's unperfected security interest in the Automobile. Accordingly, LaSalle's unperfected security interest in the Automobile will be avoided under § 544.[9]

Additionally, the insurance proceeds paid to LaSalle by State Farm after the Debtor's automobile accident are recoverable by the Trustee. The recovery of property after the avoidance of a lien or transfer is governed by § 550, which states, in part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, . . . from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

11 U.S.C.A. § 550. By virtue of this section, the Trustee is entitled to recover the $7,479.03, representing the value of the Automobile, paid to LaSalle by State Farm in November 2001 for the benefit of the bankruptcy estate.

## VI

In summary, because the exclusive method for obtaining a perfected security interest on a motor vehicle in Tennessee is by having such lien noted on the certificate of title, the court finds that LaSalle's security interest in the Automobile was not perfected until May 14, 2001, the date on which the Tennessee Department of Title and Registration received LaSalle's Application for Notation of Lien on Certificate of Title. Perfection occurred, however, in violation of the automatic stay and shall, therefore, be voided. Furthermore, the Trustee, in his position as hypothetical judicial lien creditor under § 544(a)(1), is entitled to avoid LaSalle Bank's lien in the $7,479.03 in insurance proceeds received by it from State Farm in November 2001 and to recover the same pursuant to § 550(a)(1).

---

8. This section was superseded when Tennessee adopted the Revised Uniform Commercial Code effective July 2001.

9. Because the Trustee prevails under § 544, it is not necessary to address his alternative arguments under § 541 or § 549.